[No. B159850. Second Dist., Div. Three. Aug. 28, 2003.]

JOHNNY JACKSON, Plaintiff and Appellant, v.
CITY OF LOS ANGELES, Defendant and Respondent.

900

**COUNSEL**

Mounger, Gonda & Seki and Darryl Mounger for Plaintiff and Appellant.

Rockard J. Delgadillo, City Attorney, Mark Burton, Assistant City Attorney, and Matthew C. St. George, Jr., Deputy City Attorney, for Defendant and Respondent.

OPINION

KITCHING, J.—

## I.  INTRODUCTION

This appeal presents the issue whether Government Code section 3304, subdivision (d)[1] in the Public Safety Officers Procedural Bill of Rights Act (§ 3300 et seq., the Bill of Rights Act) establishes the statute of limitations in a charter city's action to discharge a police officer, or whether, under home rule provisions applicable to charter cities in article XI, section 5 of the California Constitution, the city charter establishes the statute of limitations. We conclude that because section 3304, subdivision (d) addresses a matter of statewide interest, it prevails over the city charter's limitations provision. ■ We hold that section 3304, subdivision (d), as implemented by the police department's own administrative order, establishes the statute of limitations. Because the facts show that section 3304, subdivision (d) barred the city's administrative complaint, we reverse a judgment denying appellant's petition for writ of mandate.

## II.  STANDARD OF REVIEW

■ Discipline imposed on city employees affects their fundamental vested right in employment. (*McMillen v. Civil Service Com.* (1992) 6 Cal.App.4th 125, 129 [8 Cal.Rptr.2d 548]; *Schmitt v. City of Rialto* (1985) 164 Cal.App.3d 494, 500 [210 Cal.Rptr. 788].) When an administrative decision substantially affects a fundamental vested right, the trial court uses an independent judgment standard of review, examines the administrative record for errors of law, and exercises its independent judgment upon the evidence. The appellate court must sustain the trial court's factual findings if substantial evidence supports them. (*Evans v. Department of Motor Vehicles* (1994) 21 Cal.App.4th 958, 967, fn. 1 [26 Cal.Rptr.2d 460].) This court's review must resolve all conflicts in the evidence and must draw inferences in support of the judgment. This court, however, independently determines questions of law. (*Oldham v. Kizer* (1991) 235 Cal.App.3d 1046, 1057 [1 Cal.Rptr.2d 195].)

## III.  FACTUAL AND PROCEDURAL HISTORY

Johnny Jackson worked as a Los Angeles Police Department police officer with his partner, Officer Christian Shaw. Jackson made statements to Shaw which threatened injury to other police officers and harm to the West Valley

---

[1] Unless otherwise specified, statutes in this opinion refer to the Government Code.

police station. Shaw also witnessed an argument between Jackson and another officer at the West Valley station.

On March 25, 1999, Shaw told a supervisor, Sergeant Carl Widman, that Jackson might have problems of which Widman and other officers were not aware. Widman responded that he knew Jackson was having problems, that Jackson would be off work for a couple of days, and that Widman would assess Jackson when he returned to work.

No later than March 26, 1999, Shaw told fellow police officer Richard Bengtson that Jackson plotted to kill police officers if they came to his house or stopped him on the street, had a list of 10 officers he would "take out," and had a plan to use an assault rifle in his locker to kill police officers at the station. On March 26 or 27, 1999, Bengtson notified a supervisor, Sergeant II Paul Sciarrillo, of Shaw's statements about Jackson's misconduct.

On April 12, 1999, Sergeant Sciarrillo advised Sergeant II Thomas Wunsch, of the police department's Internal Affairs Group, that on April 2, 1999, Officer Shaw had told Sciarrillo that Jackson said he was going to shoot police officers at the West Valley Station. Acting on behalf of the Internal Affairs Group, Sergeant Wunsch prepared a written report of these allegations dated April 12, 1999.

On March 31, 2000, the chief of police issued an administrative complaint against Jackson, alleging the three counts involved in this appeal. Counts 1 and 2 alleged that between February 1 and March 31, 1999, Jackson made improper remarks to Shaw. Count 3 alleged that on March 21, 1999, Jackson made a threatening remark to another police officer.

In a hearing conducted by the Los Angeles Police Department Board of Rights, Jackson argued that as to counts 1, 2, and 3, the one-year statute of limitations of section 3304, subdivision (d) barred the Department from filing the March 31, 2000, administrative complaint. The Board rejected this argument.

On October 26, 2000, the Board found Jackson guilty of counts 1, 2, and 3, and recommended termination. The chief of police terminated Jackson on November 14, 2000.

On January 23, 2001, Jackson filed a petition for peremptory writ of mandate (Code Civ. Proc., § 1094.5) and a claim for ancillary damages (Code Civ. Proc., § 1095) against the City of Los Angeles and the Chief of Police of the Los Angeles Police Department. Jackson's petition claimed that the investigation of Counts 1, 2, and 3 was not completed within one year of

discovery and thus was barred by Los Angeles City Charter, article XIX, section 202(4) (hereafter Charter section 202(4)) and Government Code section 3304, subdivision (d).

The trial court denied Jackson's petition as to counts 1, 2, and 3, and entered judgment, from which Jackson filed a timely notice of appeal.

## IV. CONTENTIONS

Jackson contends that the disciplinary action against him was barred by section 3304, subdivision (d) and City of Los Angeles Administrative Order No. 7 (Administrative Order No. 7), which required the City of Los Angeles to file its administrative complaint against him within one year of discovery of misconduct by a supervisor (sergeant I or detective II or higher). Because Officer Bengtson reported Jackson's misconduct to Sergeant Sciarrillo, a sergeant II, no later than March 27, 1999, Jackson argues that the City of Los Angeles administrative complaint filed on March 31, 2000, was untimely.

The City of Los Angeles contends that its city charter established the limitations period, which required the Los Angeles Police Department to file an administrative complaint against an officer no more than one year after the misconduct was (1) discovered by the Los Angeles Police Department and (2) brought to the attention of the Chief of Police. Thus because Sergeant Sciarrillo brought Jackson's misconduct to the attention of the chief of police in his report to the Internal Affairs Group on April 12, 1999, the City of Los Angeles argues that its March 31, 2000, administrative complaint was timely filed.

## V. DISCUSSION

We first address whether section 3304, subdivision (d) or the Charter of the City of Los Angeles establishes the limitations period. Having concluded that section 3304, subdivision (d) establishes the limitations period, we further find that the administrative complaint was untimely and therefore the statute barred the City's punitive action against Jackson.

A.  *The Bill of Rights Act Prevails Over the Los Angeles City Charter, and Section 3304, Subdivision (b) Establishes the Limitations Period*

1.  *The State of California and City of Los Angeles Statutes of Limitation*

The limitations statutes relied on by the parties both establish a one-year limitations period. The statutes differ, however, in defining when the limitations period commences.

Section 3304, subdivision (d), part of the Bill of Rights Act, states: "Except as provided in this subdivision and subdivision (g), no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct." "Punitive action" includes "any action that may lead to dismissal." (§ 3303.)

On March 22, 1999, the Office of the Chief of Police of the Los Angeles Police Department issued Administrative Order No. 7. It recognized that enactment of section 3304, subdivision (d) might affect Charter section 202(4) (quoted, *post*) and stated: "Until there is further judicial or legislative clarification, City and State laws should be read in conjunction to the extent possible when considering misconduct investigations and final disciplinary decisions." Specifically regarding the limitations period, Administrative Order No. 7 stated:

"I. COMPLETION OF MISCONDUCT INVESTIGATIONS. [¶] Investigations of misconduct should be completed within one year of the discovery of the misconduct by a supervisor (Sergeant I or Detective II or higher). This time limit includes the filing of the verified written complaint with the Police Commission following service upon the sworn employee."

Jackson argues that Administrative Order No. 7 identifies a supervisor (sergeant I or detective II or higher) as the "person" in section 3304, subdivision (d) who is "authorized to initiate an investigation of the allegation of an act, omission, or other misconduct."

The City of Los Angeles argues that the limitations period does not begin to run until the matter is reported to the chief of police. It relies on Charter section 202(4) in effect during 1999 and 2000,[2] which stated: "No tenured officer of the Department shall be discharged, suspended, demoted in rank, or suspended and demoted in rank for any conduct that (a) was discovered by the Department and brought to the attention of the Chief of Police more than one year prior to the filing of the complaint against the officer[.]"

---

[2] Charter section 202(4) was superseded on July 1, 2000 by Los Angeles City Charter section 1070 (c), which in turn was significantly modified by an amendment that became effective on May 5, 2001.

### 2. *As a Matter of Statewide Concern, Section 3304, Subdivision (d) Applies to the City of Los Angeles*

Jackson argues that pursuant to section 3304, subdivision (d), the statute of limitations period starts upon discovery of misconduct by a person authorized to initiate an investigation of the allegation, and that such person is a sergeant I or detective II or higher as specified by Administrative Order No. 7. By contrast, the City of Los Angeles argues that as a matter of home rule under the California Constitution, Charter section 202(4) establishes the limitations period.

The City relies on California Constitution, article XI, section 5, which states that with regard to a charter city (established pursuant to article XI, section 3), "[i]t shall be competent in any city charter to provide that the city governed thereunder may make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters and in respect to other matters they shall be subject to general laws." (Cal. Const., art. X1, § 5, subd. (a).) More specifically, subdivision (b) states, in relevant part: "It shall be competent in all city charters to provide, in addition to those provisions allowable by this Constitution, and by the laws of the State for: (1) the constitution, regulation, and government of the city police force ... and (4) plenary authority is hereby granted, subject only to the restrictions of [Article XI], to provide therein or by amendment thereto, the manner in which, the method by which, the times at which, and the terms for which the several municipal officers and employees whose compensation is paid by the city shall be elected or appointed, and for their removal, and for their compensation ... and for the compensation, method of appointment, qualifications, tenure of office and removal of such deputies, clerks and other employees."

In arguing that its own Charter section 202(4) establishes the statute of limitations, the City of Los Angeles cites the sentence quoted from California Constitution, article XI, section 5, subdivision (a), giving charter cities the power to "make and enforce all ordinances and regulations in respect to municipal affairs, subject only to restrictions and limitations provided in their several charters." Charter provisions, ordinances, or regulations " 'relating to matters which are purely "municipal affairs" ' prevail over state laws covering the same subject." (*Baggett v. Gates* (1982) 32 Cal.3d 128, 136 [185 Cal.Rptr. 232, 649 P.2d 874].)

In matters of statewide concern, however, applicable general state laws govern charter cities regardless of their charter provisions. (*Baggett v. Gates, supra*, 32 Cal.3d at p. 136.) "Accordingly, the applicability of the Bill of Rights Act to charter cities turns on whether the matters it addresses are of statewide concern or are 'strictly' a municipal affair." (*Ibid.*)

█ The courts decide what constitutes a matter of statewide concern. Nonetheless in making this determination, the courts give "great weight" to the Legislature's findings. (*Baggett v. Gates, supra,* 32 Cal.3d at p. 136.) In the Bill of Rights Act, the Legislature expressly declared: "The Legislature hereby finds and declares that the rights and protections provided to peace officers under this chapter constitute a matter of statewide concern. The Legislature further finds and declares that effective law enforcement depends upon the maintenance of stable employer-employee relations, between public safety employees and their employers. In order to assure that stable relations are continued throughout the state and to further assure that effective services are provided to all people of the state, it is necessary that this chapter be *applicable to all public safety officers,* as defined in this section, *wherever situated within the State of California.*" (§ 3301, italics added.)

█ Pursuant to Penal Code section 830.1, police officers of the Los Angeles Police Department are peace officers, and are thus "public safety officers" for purposes of the Bill of Rights Act.[3] In circumstances defined in Penal Code section 830.1, subdivision (a), a peace officer's authority "extends to any place in the state." Thus the scope and nature of a peace officer's authority reinforce the legislative declaration that rights and protections provided to peace officers in the Bill of Rights Act constitute a matter of statewide concern.

Article XI, section 5, subdivision (b) of the California Constitution authorizes city charters to provide for "(1) the constitution, regulation, and government of the city police force" and grants "(4) plenary authority ...,  subject only to the restrictions of [Article XI], to provide ... for the compensation, method of appointment, qualifications, tenure of office and removal" of city employees. █ The Bill of Rights Act, however, does not "purport to regulate or specify the *causes* for which [city employees] may be removed" from their employment, and does not interfere with a city's "exclusive jurisdiction over removal of its employees[.]" (*Baggett v. Gates, supra,* 32 Cal.3d at p. 138, italics added.) The Bill of Rights Act does affect a city's disciplinary power over its employees by impinging "on the city's implied power to determine the *manner* in which its employees may be removed[,]" and "to a limited extent on the city's general regulatory power over the [police] department." (*Ibid.,* italics added.)

█ When a general law seeks to accomplish an objective of statewide concern, it may prevail over conflicting local regulations even if it impinges

---

[3] Section 3301 states: "For purposes of this chapter, the term public safety officer means all peace officers specified in Sections 830.1 ... of the Penal Code." Penal Code section 830.1, subdivision (a) states, in relevant part: "(a) Any ... chief of police of a city ..., any police officer, employed in that capacity and appointed by the chief of police ... of a city ... is a peace officer."

to a limited extent on local control. Specifically, "[g]eneral laws seeking to assure fair labor practices may be applied to police departments ... even though they impinge upon local control to a limited extent." (*Baggett v. Gates, supra*, 32 Cal.3d at p. 139.) *Baggett* concluded: "the total effect of [the Bill of Rights Act] is not to deprive local governments of the right to manage and control their police departments but to secure basic rights and protections to a segment of public employees who were thought unable to secure them for themselves." (*Id.* at p. 140.) Therefore *Baggett* held that "the Bill of Rights Act may constitutionally be applied to charter cities." (*Ibid.*)

When *Baggett* made this broad statement about application of the Bill of Rights Act to charter cities, subdivision (d) of section 3304 did not exist. The Legislature did not enact the one-year statute of limitations in subdivision (d) until 1997, and by its terms subdivision (d) applied only if the act, omission, or other misconduct occurred on or after January 1, 1998. (Stats. 1997, ch. 148 § 1; § 3304, subd. (b).) The specific Bill of Rights Act provision at issue in *Baggett* required the employing agency to provide an opportunity for an administrative appeal before it took punitive action against, or denied promotion on grounds other than merit to, a public safety officer (§ 3304, subd. (b)). *Baggett* found a "direct, substantial connection" between the right of administrative appeal conferred by the Bill of Rights Act and the Legislature's asserted purpose. (*Baggett v. Gates, supra*, 32 Cal.3d at p. 140.) By allowing an officer who believed his conduct or performance did not warrant punitive action to present his side of the matter, an administrative appeal resembled a grievance system, which had proved to be a successful device for maintaining labor peace. (*Ibid.*)

Whether legislation addresses a matter of statewide concern involves "the identification of a convincing basis for legislative action originating in extramunicipal concerns, one justifying legislative supersession based on sensible, pragmatic considerations." (*California Fed. Saving & Loan Assn. v. City of Los Angeles* (1991) 54 Cal.3d 1, 18 [283 Cal.Rptr. 569, 812 P.2d 916].) We conclude that section 3304, subdivision (d) does address a matter of statewide concern.

According to comments made by the author of Assembly Bill No. 1436 to Senate and Assembly committees during hearings on the 1997 amendment, the legislative purpose for enacting the section 3304, subdivision (d) statute of limitations provision was to reduce the limitations period for state peace officers from three years to one year, and to provide a one-year limitations period for local peace officers, who previously lacked any limitations period.[4]

---

[4] A bill analysis for a June 10, 1997, hearing by the Senate Committee on Public Safety quoted the bill's author: "*All representative law enforcement groups have carefully negotiated this bill and agree on the need and reasonableness of this bill; in essence, it is unfair to our*

A· statute of limitations has a direct, substantial connection to the Legislature's purpose of maintaining stable employer-employee relations between public safety employees and their employers so as to provide effective law enforcement and effective services to all people of the State of California. (§ 3301.)

When a law enforcement agency investigates alleged misconduct by an officer employee, the procedural protections in The Bill of Rights Act balance the public interest in maintaining the efficiency and integrity of the police force with the police officer's interest in receiving fair treatment. (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 569 [273 Cal.Rptr. 584, 797 P.2d 608].) The section 3304, subdivision (d) limitations provision promotes both policies. By encouraging prompt investigation of allegations of officer misconduct, it promotes the public interest in maintaining the efficiency and integrity of the police force. (*Pasadena Police Officers Assn. v. City of Pasadena, supra,* 51 Cal.3d at p. 572.) It promotes the police officer's interest in receiving fair treatment by requiring the diligent prosecution of known claims so that police officers receive prompt notice of claims against them,.can prepare a fair defense on the merits, and can marshal the facts while memories and evidence are fresh. (*Jordache Enterprises, Inc. v. Brobeck, Phleger & Harrison* (1998) 18 Cal.4th 739, 755–756 [76 Cal.Rptr.2d 749, 958 P.2d 1062]; *Grell v. Laci Le Beau Corp.* (1999) 73 Cal.App.4th 1300, 1304–1305 [87 Cal.Rptr.2d 358].)

A limitations period also promotes repose by giving security and stability to human affairs. (*Norgart v. Upjohn Co.* (1999) 21 Cal.4th 383, 396 [87 Cal.Rptr.2d 453, 981 P.2d 79].) Although a statute of limitations may purchase such repose at the price of procedurally barring a meritorious cause of action, the public policies favoring repose and disposition on the merits are equally strong, substantial, and important. It is for the Legislature to establish a period that strikes a balance between the two. (*Ibid.*)

The section 3304, subdivision (d) statute of limitations strikes that balance. It leaves intact the City's power to "regulate or specify the *causes* for which [city employees] may be removed" from employment, while impinging on the City's "implied power to determine the *manner* in which its employees may be removed" and "to a *limited extent* on the city's general regulatory power over the [police] department." (*Baggett v. Gates, supra,* 32 Cal.3d at p. 138, italics added.) Section 3304, subdivision (d) and Charter section

---

peace officer[s] not to investigate and bring charges or dismiss the action within a reasonable time. One year is the agreed-upon time by both labor and management." (Sen. Com. on Public Safety, Analysis of Assem. Bill No. 1436 (1997–1998 Reg. Sess.) as introduced.) During 1997 while Assembly Bill No. 1436 was pending, this comment was also placed before the Senate Rules Committee, the Assembly Committee on Public Safety and the Assembly Committee on Appropriations.

202(4) are not identical in all other respects, but insofar as they establish the same one-year limitations period, section 3304, subdivision (d) constitutes only a "limited" impingement on the City's regulatory power over police discipline. Section 3304, subdivision (d) does not require that the matter be brought to the police chief's attention. Otherwise its provisions can be harmonized with Charter section 202(4), as the Los Angeles Police Department itself accomplished with Administrative Order No. 7.

Administrative Order No. 7 stated that the enactment of section 3304, subdivision (d) "arguably may affect City Charter Section 202[,]" and advised: "Until there is further legislative or judicial clarification, City and State laws should be read in conjunction to the extent possible when considering misconduct investigations and final disciplinary decisions." The Los Angeles Police Department has the power to formulate procedures to implement the rights and protections in the Bill of Rights Act. (*Caloca v. County of San Diego* (1999) 72 Cal.App.4th 1209, 1223 [85 Cal.Rptr.2d 660].) Recognizing that discovery by "a person authorized to initiate an investigation" commences the section 3304, subdivision (d) limitations period, Order No. 7 identifies such a person in the Los Angeles Police Department as a "Sergeant I or Detective II or higher."

We therefore conclude that as a matter of statewide concern, section 3304, subdivision (d) applied to the City of Los Angeles, that Los Angeles Police Department Administrative Order No. 7 established procedures implementing section 3304, subdivision (d), and that these provisions established the limitations period applicable to Jackson. We therefore proceed to analyze whether the punitive action against Jackson was undertaken after the limitations period had ended.

B. *The Facts Show That the Limitations Period Barred the Punitive Action Against Jackson, Which Requires Reversal of the Judgment*

Having established section 3304, subdivision (d), as implemented by Administrative Order No. 7, as the limitations period, the question is whether the facts show that this limitations period barred the City's punitive action against Jackson.

The City argues that although Officer Shaw talked to Sergeant Widman about his concerns about Jackson's statements and conduct on March 25, 1999, Shaw was not specific and his generalized expression of concern was not sufficient to trigger Widman's duty to initiate an investigation. The record shows, however, that on March 26, 1999, Officer Shaw reported Jackson's misconduct to Officer Bengtson, who communicated this information to his supervisor, Sergeant Sciarrillo, on March 26 or 27, 1999. Sciarrillo was a

Sergeant II. Order No. 7 therefore established Sciarrillo's discovery of the misconduct as the date the limitations period of section 3304, subdivision (d) commenced. Thus the investigation of the allegation had to be completed within one year of Sciarrillo's March 26 or 27, 1999, discovery of the allegation of Jackson's misconduct. The City issued its administrative complaint against Jackson on March 31, 2000, making it untimely and barring the punitive action against Jackson pursuant to section 3304, subdivision (d).

We therefore reverse the judgment and remand the matter for the trial court to vacate its order denying the petition and to issue an order granting the petition for writ of mandate.

## VI. DISPOSITION

The judgment is reversed, and the matter is remanded to the trial court with directions to vacate the order denying the petition for writ of mandate, to conduct further proceedings pursuant to relief requested in that petition, and to enter a new and different order granting the petition. Costs on appeal are awarded to appellant Jackson.

Klein, P. J., and Croskey, J., concurred.

Respondent's petition for review by the Supreme Court was denied November 25, 2003. Brown, J., did not participate therein.