Filed 9/20/13  Apodaca v. County of L.A. CA2/1

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE

|  |  |
|---|---|
| RONALD APODACA, | B243393 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BS135183) |
| v. | |
| COUNTY OF LOS ANGELES et al., | |
| Defendants and Respondents. | |

APPEAL from an order of the Superior Court of Los Angeles County. James C. Chalfant, Judge.  Affirmed.

DePasquale & Cole, Paul R. DePasquale and Russell J. Cole, for Plaintiff and Appellant.

John F. Krattli, County Counsel, Joyce M. Aiello, Assistant County Counsel, and Eduardo Montelongo, Deputy County Counsel, for Defendants and Respondents.

_____

Ronald Apodaca was discharged from his employment as a blood gas technician for the Los Angeles County Department of Health Services (DHS or the department) for violating DHS policies regarding conduct toward others. He unsuccessfully appealed his suspension to the Civil Service Commission of the County of Los Angeles (the commission), then petitioned the superior court for a writ of administrative mandamus pursuant to Code of Civil Procedure section 1094.5, subdivision (a). The superior court denied the petition. On appeal, Apodaca contends evidence before the commission was insufficient to support his termination. We disagree and affirm.

## BACKGROUND

The facts are undisputed. Apodaca worked at the Harbor UCLA Medical Center. On July 23, 2009, when returning from his lunch break, he got into a dispute with a pedestrian over a parking space. As Apodaca attempted to drive into the space, the pedestrian moved into it and held out his hands to block access, intending to save the space for his wife. Apodaca waved the man away and told him to move, then drove toward him. The pedestrian refused to move, and Apodaca stopped his vehicle "a good foot" away from him. The pedestrian then got down on the ground, claimed Apodaca had hit him, and was transported to the emergency room. Apodaca was arrested by Los Angeles County Sheriff's deputies but not charged.

DHS appointed Patricia Siler to investigate the incident, and on September 10, 2009, she met with Apodaca and his union representative. Siler, formerly a stenographer employed by the County of Los Angeles, asked Apodaca a series of questions and recorded his responses in shorthand, then transcribed her notes within an hour.

As quoted in Siler's interview notes, Apodaca stated: "'I came back from lunch; I was outside of the PCDC building. There was a person in another car leaving, and they gestured to me if I wanted the parking spot. I nodded back yes. As I was attempting to drive into the spot, a man came and stood in the parking

2

space, and was holding out his hands. I thought if he saw me trying to park, he would move. I stopped a good foot away from him. Just then a van pulled up with a woman in it who I presumed was his wife. The man started yelling, "He hit me, he hit me." The woman gestured for the man to get on the ground, and he got down on the ground. I saw another person who had parked in the lot, and I asked them, "Did you see what happened?" They said no. I saw the Safety Police, and I flagged them down. They took the information, and then a Sheriff came, handcuffed me, and took me to jail.'"

When asked whether he said anything to the pedestrian, Apodaca responded, "'I motioned with my hand to move, and I told him to get out of the way.'" When asked whether he drove his vehicle toward the pedestrian, Apodaca responded, "'Yes.'"

DHS's Employee Evaluation and Discipline Guidelines prohibit threatening bodily harm to another, including "threats of violence directed at any employee, patient, member of the public, or a County facility." The department's Policy No. 792 prohibits "[t]hreats, threatening behavior or acts of violence against employees, patients, visitors or other individuals by anyone on County property or anywhere an employee is engaged in County-related business." County of Los Angeles Civil Service Rule 18.031 states, "Failure of an employee to perform his or her assigned duties so as to meet fully explicitly stated or implied standards of performance may constitute adequate grounds for discharge, reduction or suspension. Where appropriate, such grounds may include, but are not limited to, . . . failure to exercise sound judgment, . . . failure to deal effectively with the public," and "any behavior or pattern of behavior . . . which is unbecoming a county employee . . . ."

On December 30, 2009, DHS sent Apodaca a letter indicating his employment would be terminated due to violation of the above policies. The letter specifically referenced Apodaca's admission to Siler that he drove his car toward the pedestrian and included a copy of Siler's interview notes.

3

Apodaca requested a meeting with management to discuss the adverse employment action.[1] He attended the meeting accompanied by a union representative, but said nothing and provided no documentation or witnesses to contest the action. The meeting lasted approximately seven minutes, during which Apodaca's representative said, "'We deny all the allegations. We have nothing further to say.'" Despite the meeting coordinator's efforts to elicit a substantive presentation, neither Apodaca nor his representative made any further statement.

Apodaca was discharged on April 2, 2010. Two weeks later, on April 16, 2010, he requested an evidentiary hearing before the commission to appeal the discharge. At the hearing, Michael Lampert, the department's administrative services manager, testified DHS terminated Apodaca's employment because his conduct on July 29, 2009 violated DHS policy and civil service rules. He stated Apodaca's conduct "was totally contrary to the mission of our department and our organization, which is to help and heal people. To be a staff of this organization and to attempt to move someone forcibly by aiming a car at them in our parking lot is diametrically opposed to our mission."

Lampert stated he also considered Apodaca's record of discipline when deciding whether to terminate his employment. Apodaca was chastised for excessive tardiness in January and December 2007 and for pushing a door against a coworker out of anger in November 2007, and was suspended for five days in 2009 for absenteeism and for cursing at and denigrating the same coworker. Lampert said, "the department had already sent several messages to Mr. Apodaca regarding similar kind[s] of conduct and the conduct is increasing to the extent that it is now involving someone outside of the department out in plain view in the parking lot area and now has gone from pushing a door to causing a movement of an automobile, which is a dangerous weapon, and directing it at an individual in

---

[1] Commonly called a Skelly hearing, after *Skelly v. State Personnel Bd.* (1975) 15 Cal.3d 194.

4

order to get them to move out of a parking space. It's just—it has become extremely egregious and, frankly, dangerous."

Siler testified about her interview with Apodaca, including her transcription of the proceedings, and verified that her interview notes constituted "a true and correct interpretation" of Apodaca's responses. The interview notes were admitted into evidence over Apodaca's objection. Siler was not asked personally to relate Apodaca's interview responses.

Also admitted into evidence was a sheriff's incident report, which reflected that Apodaca admitted to a deputy that he drove his vehicle toward the pedestrian. The report also reflected that the victim told deputies Apodaca revved his engine and told him to "'Get the fuck out of the way,'" then struck the pedestrian with his vehicle. The department offered a hospital record indicating the pedestrian presented to the emergency room with a contused knee and complained of having been hit by a car, but the hearing officer refused to consider it.

Apodaca offered no testimony or other evidence at the hearing.

The hearing officer found DHS failed to prove Apodaca actually struck the pedestrian or cursed at him, but did intentionally drive his vehicle toward him to make him vacate a parking space. When the pedestrian refused to get out of the way, Apodaca drove his car to within one foot of him before stopping. This violated department policies and Civil Service Rule 18.031 and warranted discharge.

On September 28, 2011, the commission adopted the hearing officer's findings and conclusions as its final decision.

On December 20, 2011, Apodaca petitioned the Los Angeles Superior Court for a peremptory writ of administrative mandate against the commission, naming the County of Los Angeles as the real party in interest. He claimed the commission abused its discretion in sustaining the termination of his employment because no admissible evidence supported the commission's findings, and the findings did not support the decision to discharge. The petition sought issuance of

5

a writ of mandate to vacate the commission's decision and reinstate Apodaca to his position with back pay and interest, or in the alternative to reinstate his employment and consider less drastic discipline.

In his trial brief Apodaca contended the sheriff's report and emergency room record offered by the department were inadmissible hearsay, and thus could not alone support the commission's findings. He also argued his statements to Siler, although admissible pursuant to Evidence Code section 1220 (party admission), did not demonstrate that he "was rude to the man he encountered in the parking lot, much less that he assaulted or battered him with a motor vehicle."

The trial court found Apodaca admitted to Sheriff's deputies and Siler that he intentionally drove his vehicle toward a pedestrian to force him to move from a parking space. At the hearing the court observed, "You can't use your car to force somebody out of a parking space, even if you [] think the person is unlawfully or wrongly taking the space from you. You can't use your car as a weapon, which is what [Apodaca] did." "[I]t's no different than pointing a gun at somebody saying move out of the space. It is different, but it's—it's no different in terms of legal effect. It's assaultive behavior." Finding it was "clear from Apodaca's statement that what he did was intentional," the court concluded admissible evidence supported his discharge.

Judgment was entered against Apodaca on June 20, 2012. He timely appealed.

## DISCUSSION

"Discipline imposed on city employees affects their fundamental vested right in employment. [Citations.] When an administrative decision substantially affects a fundamental vested right, the trial court uses an independent judgment standard of review, examines the administrative record for errors of law, and exercises its independent judgment upon the evidence. The appellate court must sustain the trial court's factual findings if substantial evidence supports them. [Citation.] This court's review must resolve all conflicts in the evidence and must

6

draw inferences in support of the judgment. This court, however, independently determines questions of law." (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 902.)

In county civil service hearings, "[h]earsay evidence may be admitted for any purpose, but shall not be sufficient in itself to support a finding unless it would be admissible over objection in civil actions." (Los Angeles County Civil Service Rules, rule 4.10(B), Los Angeles County Code, tit. 5, app. 1, p. 5-203.) Apodaca contends the only admissible evidence, his statements to Siler, do not support the trial court's findings because they do not demonstrate even that he was rude to the pedestrian, much less that he assaulted or battered him. We reject both the premise and substance of the argument.

Apodaca's statements to Siler, though hearsay, were admissible. (Evid. Code, § 1220 ["Evidence of a statement is not made inadmissible by the hearsay rule when offered against the declarant in an action to which he is a party in either his individual or representative capacity, regardless of whether the statement was made in his individual or representative capacity"].) By his own admission, Apodaca intentionally drove his vehicle to within one foot of a pedestrian who was blocking a parking space Apodaca wanted.

It was reasonable for the trial court (and commission) to infer that when Apodaca intentionally drove his vehicle toward a pedestrian who was blocking a parking spot, he did so to cause the pedestrian to fear for his safety. DHS policy prohibits directing threatening behavior at members of the public. County Civil Service Rule 18.031 provides that conduct that is unbecoming a county employee constitutes grounds for discharge. Apodaca's admitted conduct constituted both a threat of violence directed at a member of the public on county property and behavior which is unbecoming in a county employee. His argument that the conduct does not establish he was rude or committed assault or battery is therefore irrelevant.

7

Apodaca argues other inferences would also have been reasonable. For example, it would have been reasonable to infer that when he drove toward the parking space the pedestrian stepped in front of him, causing him to stop, which was not misconduct. "[T]here is nothing inherently assaultive about driving toward a parking space where a man is standing in a public parking lot," he argues. Furthermore, it would have been reasonable to infer the pedestrian lied about Apodaca revving his engine and cursing at him, lied about being struck by the vehicle, and faked an injury. "Perhaps the man was already coming to the Medical Center for an injury to his knee, saw Apodaca's County I.D., and thought he might be able to concoct a story to blame his injury on Apodaca in order to get something more from the County than bandages and pain killers."

These inferences might perhaps have been drawn by the commission and trial court, but the scope of our review is limited to whether evidence supported inferences the court actually drew, not those it could have drawn but did not. We must "resolve all conflicts in favor of the party prevailing in the superior court and must give that party the benefit of every reasonable inference in support of the judgment." (*Pasadena Unified School Dist. v. Commission on Professional Competence* (1977) 20 Cal.3d 309, 314.) "When more than one inference can be reasonably deduced from the facts, the appellate court cannot substitute its deductions for those of the superior court." (*Ibid*.) Here, the trial court's inference that Apodaca violated department and county policy by threatening a member of the public is supported by Apodaca's own admissions to Siler. No more is required.

Apodaca argues the Sheriff's incident report and emergency room medical record were inadmissible. Neither the commission nor the trial court considered the medical report, but as to the incident report this argument has some merit because it appears the person who wrote the report was not the deputy to whom Apodaca spoke. But even if this evidence was inadmissible it would not change

8

our conclusion that the trial court's findings were supported by other evidence that was admissible.

## DISPOSITION

The order denying Apodaca's petition for writ of mandate is affirmed. The county shall recover its costs on appeal.

NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS


CHANEY, J.


We concur:


MALLANO, P. J.


JOHNSON, J.