Filed 3/21/18; Certified for publication 4/10/18 (order attached)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MATTHEW SQUIRE et al., <br><br> Plaintiffs and Appellants, <br><br> v. <br><br> COUNTY OF LOS ANGELES et al., <br><br> Defendants and Respondents. | B276887 <br><br> (Los Angeles County <br> Super. Ct. No. BS156270) |

APPEAL from a judgment of the Superior Court of
Los Angeles County.  James C. Chalfant, Judge.  Affirmed.

Hayes & Ortega, Hayes, Ortega & Sanchez, Dennis J.
Hayes, Tracy J. Jones and for Plaintiffs and Appellants.

Hausman & Sosa, Jeffrey M. Hausman and Larry D.
Stratton for Defendants and Respondents.

_____

Appellants Matthew Squire (Squire) and Ernesto Masson (Masson) (collectively appellants) appeal from the judgment denying their petition for writ of mandate. They contend the written reprimands they received from the Los Angeles County Sheriff's Department (Department) in September 2014, should be rescinded because they did not receive notice of proposed discipline within the one-year statute of limitations period in the Public Safety Officers Procedural Bill of Rights Act (POBRA) (Gov. Code, § 3300 et seq.). We disagree and affirm.

**Factual and Procedural Background**

**The May 2014 Reprimands**

Masson is a lieutenant and Squire a sergeant with the Department. In connection with the Department's investigation of another employee for sexually related misconduct, appellants each received written reprimands from the Department dated May 22, 2014 (the May 2014 reprimands). The May 2014 reprimands concerned conduct between "September of 2008 and continuing through May 31, 2013."

Masson's reprimand stated: "[Y]ou engaged in conduct of a sexual nature, and/or such conduct that would reasonably be considered inappropriate for the workplace, by failing to follow up with an email from a subordinate supervisor which raised concerns of a LET's [Law Enforcement Technician] [redacted] unprofessional and/or inappropriate dress in the workplace."

Squire's reprimand stated: "[Y]ou engaged in conduct of a sexual nature, and/or such conduct that would reasonably be considered inappropriate for the workplace, by having knowledge of a personal relationship between a subordinate supervisor [redacted] and a LET [redacted] and failing to take appropriate action."

2

The May 2014 reprimands each cited a violation of the Department's Manual of Policy and Procedure (Manual) section "3-01/121.30 Policy of Equality – Inappropriate Conduct Toward Others (Gender)." The reprimands concluded: "You are hereby reprimanded for your conduct in this incident and advised that any future violations of a similar nature may result in more severe discipline."

Masson and Squire each refused to sign the May 2014 reprimands, which were never placed in their personnel files.

**The Grievance Process**

Under their collective bargaining unit's Memorandum of Understanding (MOU), appellants each filed formal grievances.

Masson's grievance, filed on May 28, 2014, argued the underlying e-mail did not raise any concerns regarding the unnamed officer's unprofessional and/or inappropriate dress in the work place, and did not ask him to address any issues. Masson asked that the status of his violation be changed to "Unfounded" and that "no written reprimand be issued regarding this matter."

Masson's "First Level Supervisor" denied his grievance on June 4, 2014. Masson then submitted his grievance to the "Second Level Supervisor" on June 9, 2014, and it was deferred to the "Executive Level." On July 22, 2014, Chief Jacques A. La Berge, along with another commanding officer, held a grievance hearing. In his written decision, Chief La Berge stated that Masson's grievance was "**DENIED**," and continued: "**However**, I agree that the [Policy of Equality] section listed on the Written Reprimand '3-01/121.30 POE – Inappropriate Conduct toward Others (based on sex)' inaccurately describes the offense in question and appropriate findings. . . . I have

determined that the [Manual] findings and Written Reprimand **should be modified and corrected to: 3-01/122.05 Policy of Equity – Duties of Supervisors and Managers.**" Chief La Berge stated in his written decision that he had spoken to Masson's representative on September 16, 2014, and that she would notify Masson "ahead of the service of the revised Written Reprimand." Chief La Berge signed the decision on September 16, 2014, and it was signed off by the "Sheriff or Alternate" on October 7, 2014. A formal letter of decision was sent to Masson by Captain Gregory P. Nelson on October 8, 2014, which stated that the Department had rendered its decision on Masson's grievance, that his grievance was "denied," and that the May 2014 reprimand "should be modified and corrected" to state the appropriate Manual section violated.

Squire's grievance, filed on June 4, 2014, argued the investigation did not support the alleged violation. Squire requested "that the facts and circumstances of the case be reconsidered and that the Written Reprimand be revoked, further that no mention of this be made in grievant's Performance Evaluation nor used for any other personnel purpose." Squire's grievance also went through the same three levels, and Chief La Berge, along with another commanding officer, held a grievance hearing on the same day as Masson's hearing, July 22, 2014. As with Masson, Chief La Berge's written decision stated that Squire's grievance was "**DENIED**," but the reprimand "**should be modified and corrected to: 3-01/122.05 Policy of Equity – Duties of Supervisors and Managers**." Chief La Berge's written decision likewise stated that he had spoken with Squire's representative on September 16, 2014, who would notify Squire of his decision. Chief La Berge signed the decision

4

on September 16, 2014, and it was signed off by the Sheriff or Alternate on October 20, 2014. Captain Nelson sent a formal letter of decision to Squire on October 23, 2014, which stated that the Department had rendered its decision on Squire's grievance and that the May 2014 reprimand "shall be corrected. The original charge of Manual of Policy and Procedures (MPP) section 3-01/121.30, Policy of Equality—Inappropriate Conduct Towards Others (based on sex), shall be rescinded and replaced with MPP section 3-01/122.05, Policy of Equality—Duties of Supervisors and Managers. As a result, your grievance shall be granted in part."

**The September 2014 Reprimands**

Inexplicably, prior to the formal letters of decision signed by Captain Nelson, Masson was presented with a written reprimand on September 25, 2014, that was signed by Chief La Berge on September 26, 2014, and Squire was presented with a written reprimand on September 29, 2014, that was signed by Chief La Berge on October 3, 2014 (the September 2014 reprimands). Masson and Squire also refused to sign the September 2014 reprimands. The September 2014 reprimands contained the same date as the May 2014 reprimands (May 22, 2014), and the same file number of IV2335853. The Manual section violation was changed on each to "3-01/122.05 Policy of Equity – Duties of Supervisors or Managers."

Masson's reprimand stated: "[Y]ou failed to fulfill your Department reporting requirements, by not following up with an email from a subordinate supervisor which raised concerns of an LET's [redacted] unprofessional and/or inappropriate dress in the workplace, and/or failing to immediately contact the Department's Intake Specialist Unit."

5

Squire's reprimand stated:  "[Y]ou failed to fulfill your Department mandated reporting requirements, by having knowledge of a personal relationship between a subordinate supervisor [redacted] and an LET [redacted] although you did speak to Sgt. [redacted] about the inappropriate relationship and the perceptions of other employees, you failed to immediately contact the Intake Specialist Unit."

The September 2014 reprimands contained the same disciplinary result as the May 2014 reprimands:  "You are hereby reprimanded for your conduct in this incident and advised that any future violations of a similar nature may result in more severe discipline."  The September 2014 reprimands were placed in appellants' personnel files.

**The Writ Petition and Ruling**

Appellants filed a petition for writ of mandate against the County of Los Angeles and its Board of Supervisors (the County), seeking an order directing the County to rescind and purge the September 2014 reprimands from appellants' records, and seeking civil penalties.  In opposition to the writ petition, the County submitted the declaration of Captain Nelson, who stated that the September 2014 reprimands were the result of the formal grievance process initiated by each appellant and constituted modifications of the original May 2014 reprimands. The trial court denied the writ petition in a lengthy tentative decision, which was adopted as the final decision after oral argument.  The court found the September 2014 reprimands were modifications of the May 2014 reprimands rather than new reprimands, that they were the result of appellant's grievances, and that they were therefore timely.  This appeal followed.

6

# DISCUSSION

## I. Standard of Review

Appellants brought their writ petition under Code of Civil Procedure section 1085. "A writ of traditional mandamus (Code Civ. Proc., § 1085) may be used to compel the performance of a duty that is purely ministerial in nature or to correct an abuse of discretion." (*Khan v. Los Angeles City Employees' Retirement System* (2010) 187 Cal.App.4th 98, 105–106.) "Mandamus is an appropriate remedy to compel the exercise of discretion by a government agency, but does not lie to control the exercise of discretion unless under the facts, discretion can only be exercised in one way." (*Ghilotti Construction Co. v. City of Richmond* (1996) 45 Cal.App.4th 897, 904.) The role of the appellate court in a mandamus proceeding is the same as that of the trial court. The appellate court considers the record of the agency to determine whether it abused its discretion, namely, whether its "decision was arbitrary, capricious, entirely lacking in evidentiary support, unlawful, or procedurally unfair." (*Khan, supra,* 187 Cal.App.4th at p. 106.) To the extent there are issues of statutory interpretation, these are reviewed de novo on appeal where there are no disputed factual issues. (*Ibid.*)

## II. POBRA

POBRA "sets forth a list of basic rights and protections which must be afforded all peace officers . . . by the public entities which employ them." (*Baggett v. Gates* (1982) 32 Cal.3d 128, 135.) POBRA balances the public interest in maintaining the efficiency and integrity of the police force with the officer's interest in receiving fair treatment. (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 909 (*Jackson*).) One of POBRA's basic protections is the speedy adjudication concerning

7

accusations of misconduct. (*Alameida v. State Personnel Bd.* (2004) 120 Cal.App.4th 46, 63.) Speedy adjudication permits peace officers to prepare a fair defense on the merits and marshal facts while memories and evidence are still fresh. (*Jackson, supra,* at p. 909.)

To this end, POBRA requires that investigation of a peace officer's alleged misconduct be completed within one year of discovery in order for a public agency to take punitive action against the officer. Specifically, Government Code section 3304, subdivision (d)(1) (hereafter section 3304(d)) provides: "Except as provided in this subdivision and subdivision (g), no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct. This one-year limitation period shall apply only if the act, omission, or other misconduct occurred on or after January 1, 1998. In the event that the public agency determines that discipline may be taken, it shall *complete its investigation and notify the public safety officer of its proposed discipline* by a Letter of Intent or Notice of Adverse Action *articulating the discipline that year*, except as provided in paragraph (2). The public agency shall not be required to impose the discipline within that one-year period." (Section 3304(d), italics added.)

"[T]he fundamental purpose of this provision is to place a one-year limitation on *investigations* of officer misconduct . . . to ensure that an officer will not be faced with the uncertainty of a lingering investigation, but will know within one year of the

8

agency's discovery of the officer's act or omission that it may be necessary for the officer to respond in the event he or she wishes to defend against possible discipline." (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 322 (*Mays*).)

Following *Mays*, section 3304(d) was amended effective January 1, 2010. (Stats. 2009, ch. 494, § 1.) Among other things, the amendment added the following language: "Letter of Intent or Notice of Adverse Action articulating the discipline that year." "The amendment was enacted to legislatively overrule the holding of *Mays* that subdivision (d) of the pre-2010 version of section 3304 did not require 'notification of the specific discipline contemplated by the public agency' (*Mays, supra*, 43 Cal.4th at p. 322), as opposed to merely 'notice that disciplinary action may be taken' (*id*. at p. 325)." (*Neves v. Department of Corrections & Rehabilitation* (2012) 203 Cal.App.4th 61, 68, fn. 3; *Earl v. State Personnel Bd.* (2014) 231 Cal.App.4th 459, 465, fn. 5 [Section 3304(d) "was amended in 2010 to abrogate the portion of *Mays* holding that the specific discipline to be imposed need not be included in the notice"].)

## III. Analysis[1]

### A. Notice of Proposed Discipline Was Timely

The trial court and the parties adopted May 31, 2013, as the beginning date of the one-year limitations period. Thus, under section 3304(d) the Department had until May 30, 2014, to finish its investigation and provide notice to appellants of its proposed discipline. It is undisputed that within this one-year

---

[1]     Because our analysis does not require resort to the legislative history of section 3304(d), we deny appellant's request to take judicial notice of this history.

period, the Department's investigation was completed and the initial May 2014 reprimands were issued.

We were initially troubled that it appeared from the record the Department had simply *imposed* discipline, rather than providing *notice* of proposed discipline, within the one-year deadline. We therefore asked the parties to provide additional briefing on the issue of whether the Department had complied with section 3304(d)'s notice requirement.

In their supplemental response, appellants did not squarely address this issue. Rather, they reiterated the arguments made in their original briefs; namely, that the May 2014 reprimands did not allege the misconduct upon which discipline was ultimately based; the May 2014 reprimands were rescinded and therefore cannot be deemed as complying with section 3304(d); and it would be contrary to public policy to give effect to the "falsely and maliciously" backdated September 2014 reprimands.

In its supplemental response, the County pointed out that appellants "did not, and apparently still do not question the adequacy or timeliness of the May 2014 reprimands, aside from their unsubstantiated claim that the amended reprimands constituted new discipline." The County persuasively argued that appellants have "repeatedly and even insistently waived" the issue of whether the Department complied with section 3304(d)'s notice requirement. (See *Tisher v. California Horse Racing Bd.* (1991) 231 Cal.App.3d 349, 361 [failure to brief an issue a waiver]; *Franz v. Board of Medical Quality Assurance* (1982) 31 Ca1.3d 124, 143 [failure to raise an issue in the trial court a waiver].)

Moreover, the County has convinced us that, even if there was no waiver or forfeiture here, the May 2014 reprimands were

10

for all practical purposes *intended* discipline.  This is so because, as Captain Nelson established in his declaration, the May 2014 reprimands were never placed in appellants' personnel files.  Only the September 2014 reprimands were placed in their files.  As the County points out, other provisions of POBRA recognize that only those documents actually placed in a peace officer's personnel file give rise to procedural rights by the officer, including that an officer must be given an opportunity to sign the document (Gov. Code, § 3305), and must be given an opportunity to respond to an adverse comment placed in his or her file (Gov. Code, § 3306).

Our conclusion that the May 2014 reprimands in fact constitute notice of proposed discipline also comports with the policy behind section 3304(d).  At its essence, section 3304(d) is a statute of limitations for the investigation period.  (See *Mays*, *supra*, 43 Ca1.4th at p. 321.)  While the 2010 amendment of section 3304(d) added references to "Notice of Adverse Action" and "Letter of Intent," the amendment did not define these new terms nor specify what they must include, other than an articulation of the proposed discipline.  Nor did the amendment suggest that the fundamental purpose of section 3304(d) had changed from a limitations period to a notice provision.  The purpose of notice is to "'apprise interested parties of the pendency of the action and afford them an opportunity to present their objections.'" (*California School Employees Assn. v. Livingston Union School Dist.* (2007) 149 Cal.App.4th 391, 399.)  This is precisely what happened here, as discussed next.

11

### B. The September 2014 Reprimands Are Not Subject to the One-Year Limitations Period

It is undisputed that both appellants utilized the grievance and multi-step review procedures of their applicable MOU, which included grievance hearings for both appellants before the chief and one other commanding officer.[2] As set forth in Captain Nelson's formal letters to each appellant and as established in his declaration, the September 2014 reprimands were a direct result of the formal grievance process initiated by each appellant. Indeed, appellants do not suggest the Department would have any reason to reconsider or modify the May 2014 reprimands had appellants not filed formal grievances.

POBRA provides: "Where a predisciplinary response or grievance procedure is required or utilized, the time for this response or procedure shall not be governed or limited by this chapter." (Gov. Code, § 3304 subd. (e).) It goes without saying that if a peace officer is not required to initiate a grievance procedure within the one-year limitations period, the public employer cannot be required to issue its response to the grievance within that same year. Thus, the September 2014 reprimands are not subject to the one-year time frame in section 3304(d). As a result, the entire theory upon which appellants base their appeal therefore fails.

Appellants try to avoid this result by claiming that the grievance procedures used by them were not "predisciplinary" as

---

[2] Appellants attached the incorrect MOU grievance provisions to the record, attaching "Appendix C" pertaining to the District Attorney's Office, rather than "Appendix B" pertaining to the Department.

12

required by the statute.[3]  In light of our earlier conclusion that the May 2014 reprimands constituted notice of intended discipline, appellants' grievance procedures were necessarily predisciplinary.

### C. The September 2014 Reprimands Do Not Constitute New Discipline or Allege Different Conduct

Appellants also try to avoid the result that section 3304(d) is inapplicable to the September 2014 reprimands by arguing that the September 2014 reprimands were "new" discipline—i.e., they "contained different charges concerning different alleged misconduct" and therefore "fundamentally change the nature of the May 2014 reprimands."

To support their argument, appellants make a comparison of the two reprimands.  In doing so, appellants' focus is too narrow and incomplete or, as the trial court aptly found, a "mischaracter[ization]" of the reprimands.  A careful reading of Squire's two reprimands shows that the May 2014 reprimand accuses him not only of personally engaging in sexual conduct, but also of "*having knowledge of a personal relationship between a subordinate supervisor* [redacted] *and a LET* [redacted] *and failing to take appropriate action.*"  (Italics added.)  Squire's September 2014 reprimand omits the reference to his own personal sexual conduct, but still accuses him of "*having knowledge of a personal relationship between a subordinate supervisor* [redacted] *and an LET* [redacted] *and fail[ing] to immediately contact the Intake Specialist Unit.*"  (Italics added.)

---

[3]  Appellants' argument that the County raises this statutory issue for the first time on appeal is without merit.  Our review of the record shows that the County presented this issue below by a "Notice of Errata Re Opposition Brief," filed on May 11, 2016.

13

In other words, both reprimands concern the same underlying conduct of failing to report someone else's misconduct. Indeed, the record shows that Squire had a consistent understanding of the charges brought against him. His second level reviewer wrote: "The grievant challenged the charge against him of not taking appropriate supervisory action regarding a possible equity violation that was sexual in nature. . . . [¶] . . . [¶] . . . Lt. Squire said he did not notify his supervisor or the Intake Office at Equity because he felt he met the requirement in this case by counseling [redacted]."

Masson's May 2014 reprimand accuses him not only of personally engaging in sexual conduct, but also of "*failing to follow up with an email from a subordinate supervisor which raised concerns of a LET's* [redacted] *unprofessional and/or inappropriate dress in the workplace.*" (Italics added.) Likewise, Masson's September 2014 reprimand omits the reference to his own personal sexual conduct and accuses him of "*not following up with an email from a subordinate supervisor which raised concerns of an LET's* [redacted] *unprofessional and/or inappropriate dress in the workplace*, and/or failing to immediately contact the Department's Intake Specialist Unit." (Italics added.) Again, the two reprimands address the same underlying conduct.

It is true that the September 2014 reprimands identify violations of different Manual sections than the May 2014 reprimands. It is also true that appellants did not request in their formal grievances that any changes be made to the Manual sections asserted. But contrary to appellants' position, this does not remove the September 2014 reprimands from the grievance process. The different Manual sections identified by Chief

La Berge were more accurate in light of the omission of allegations of appellants' own sexual misconduct.  While the May 2014 reprimands referred to "Inappropriate Conduct Toward Others (Gender)," the September 2014 reprimands more correctly referred to "Duties of Supervisors or Managers."  Appellants point to nothing in their MOU that would preclude the Department from making a more accurate finding in written reprimands issued after a grievance hearing.

Most importantly, the September 2014 reprimands did not increase or change the level of discipline.  The discipline imposed on appellants remained exactly the same; namely, a written reprimand.  Thus, there is no merit to appellants' contention that the September 2014 reprimands constituted "new" discipline.

Appellants' writ petition was properly denied.

### D. Civil Penalties and Sanctions

Appellants request that in the event we find the existence of a POBRA violation and reverse the judgment, we should award each of them a $25,000 civil penalty under Government Code section 3309.5, subdivision (e) for the Department having "maliciously" violated POBRA.  Because we do not find any POBRA violation, we do not address this request.[4]

The County likewise requests that sanctions be imposed against appellants under Government Code section 3309.5, subdivision (d)(2) for "filing a bad faith or frivolous action" on appeal.  Appellants are correct that the County did not seek such

---

[4]     We note that appellants incorrectly state the trial court "never reached the issue of awarding Section 3309.5 penalties." The trial court expressly found there was no malicious backdating of the September 2014 reprimands because "they bear proper signature dates."

15

sanctions below.  We decline to order an award of sanctions for the filing of this appeal.

## DISPOSITION

The judgment denying the petition for writ of mandate is affirmed.  The County is entitled to recover its costs on appeal.


_____, J.
ASHMANN-GERST

We concur:


_____, P. J.
LUI


_____, J.
HOFFSTADT

16

Filed 4/10/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| MATTHEW SQUIRE et al., | B276887 |
| Plaintiffs and Appellants, | (Los Angeles County Super. Ct. No. BS156270) |
| v. | |
| COUNTY OF LOS ANGELES et al., | **ORDER CERTIFYING OPINION FOR PUBLICATION** |
| Defendants and Respondents. | |

THE COURT:*

The opinion in the above-entitled matter filed on March 21, 2018, was not certified for publication in the Official Reports.

For good cause it now appears that the opinion should be published in the Official Reports and it is so ordered.

_____

\*      LUI, P. J., ASHMANN-GERST, J., HOFFSTADTJ.