Filed 4/22/20; Certified for publication 5/12/20 (order attached)

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JAMES WILLIS, | D074988 |
| Plaintiff and Appellant, | |
| v. | (Super. Ct. No. 37-2016-00004240-CU-OE-NC) |
| CITY OF CARLSBAD, | |
| Defendant and Respondent. | |

APPEAL from a judgment of the Superior Court of San Diego County, Timothy M. Casserly, Judge. Affirmed.

Gilleon Law Firm and James C. Mitchell for Plaintiff and Appellant.

Daley & Heft and Lee H. Roistacher, Mitchell D. Dean, Heather E. Paradis, Garrett A. Smee; Office of the City Attorney and Celia A. Brewer, Walter C. Chung for Defendant and Respondent.

Plaintiff and appellant James Willis, a peace officer employed by the Carlsbad Police Department (Department), sued defendant and respondent City of Carlsbad (City) alleging in part that it engaged in whistleblower retaliation against him in violation of

Labor Code section 1102.5, subdivision (b) by denying him promotions after he reported what he perceived was misconduct by another officer and complained about a Department program he believed was an unlawful quota system. Before trial, City successfully moved to strike allegations of other assertedly retaliatory acts within Willis's cause of action on grounds he had not timely presented a government tort claim within six months of the acts as required by the Government Claims Act (Gov. Code,[1] § 911.2). Thereafter, the trial court in limine excluded evidence of any violations by City of the Public Safety Officers Procedural Bill of Rights Act (POBRA, or at times, the Act; § 3300 et seq.), while at the same time permitting City to present evidence Department had denied Willis promotion because of a June 2012 e-mail he wrote under an assumed name lodging the officer misconduct accusations. The jury returned a verdict finding in favor of Willis that his reporting of City's violation of law was a contributing factor in City's decision to deny him the promotion. However, it also found City would have denied Willis his promotion anyway for legitimate independent reasons. Accordingly, the court entered judgment in City's favor on the whistleblower retaliation claim.

Willis contends the trial court erred as a matter of law by striking those portions of his section 1102.5 cause of action because the Government Claims Act's six-month statute of limitations was either equitably tolled or his cause of action had not accrued by reason of the continuing tort/continuing violation doctrine. He further contends the

---

[1] Undesignated statutory references are to the Government Code. We will refer to Labor Code section 1102.5, subdivision (b) throughout as section 1102.5(b) or the statute generally as section 1102.5.

2

court's evidentiary rulings were a prejudicial abuse of discretion.  We conclude the trial court did not err, and accordingly affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

Willis, a peace officer since 2000, was hired by City in 2008.  In 2009 and 2010 his supervisors gave him overall exceptional performance ratings.  In 2011, Willis applied for and was selected to be a detective in the Department's crimes of violence unit, where he worked with two other detectives.  He received exceptional performance evaluations in that position as well.

In June 2012, Willis created a fictitious e-mail account under a pseudonym and wrote a critical e-mail about another detective who worked in his unit, sending it to various government entities, public information officers and news organizations.[2]

---

2    The e-mail reads in part:  "There is a foul smell coming from the Carlsbad police station.  I have several friends and neighbors who are Carlsbad cops and they told me of a rotten apple in their ranks.  His name is [X] and I have on reliable information that he is a liar and a dishonest cop.  I've heard from several members of the force that he PERJURED himself on more than one occasion on the witness stand while testifying UNDER OATH in a court of law!!  Officer [X's] MO is to take credit for other officers work [sic].  This past year gang detective [E.H.] recognized a murderer after a fight and told officer [X] about the guy.  Well officer [X] didn't know the guy but LIED in court and took credit for identifying the perp so that he could get the praises of his commanders!  He was awarded the top cop of the year for this LIE!!!  What kind of guy lies just to make himself look good?  A dirty cop that is who!  Gang cop [J.F.] filed a hostile work complaint against him because of his lies and the cops REFUSED to investigate it!  Apparently his father is a retired commander from Carlsbad PD and still has connections in the city!  It is time for others to know about this bad apple.  His reputation is well known by the cops I talk with but the folks at the top in Carlsbad refuse to do anything about him.  A lying cop is a bad cop!!!!  He should be fired we don't need anymore [sic] dishonest cops!!!  Please look into this guy!!  Talk to officer [H.] and he will tell you that officer [X] is a liar!!!"

Several months later, during an investigation about the e-mail, Willis admitted he wrote it.  In late 2012, Willis took family leave for the birth of his child.  When he returned to work in January 2013, Willis's captain informed him he was being reassigned from the crimes of violence unit to patrol.[3]

In April 2013, Willis received an exceptional performance rating for his work in 2012.  But he was also investigated and interviewed about the other officer's possible misconduct and received a written reprimand stating he had violated Department policy by failing to promptly bring his allegations to a Department manager or supervisor.  Willis appealed that decision.

_____

[3]     Department asks this court to take judicial notice of the Labor Commissioner's "Notice of Retaliation Complaint Filed and Conference," which attaches Willis's 2013 retaliation complaint filed with the Labor Commissioner.  Department states the parties did not ask the trial court to take judicial notice of this document below because it was "not necessary" and "not relevant to the issue raised at the time . . . ."  Department argues the document has "become potentially relevant here on appeal" because it bears on the correctness of the trial court's ruling on Department's motion to strike.  In an unsworn assertion, Department states the document is a copy of an original document "on file with [the] respondent court" and suggests it was an exhibit.  However, the document was not an exhibit to Willis's complaint, nor was it presented to the trial court in connection with Department's motion to strike, Willis's opposition, or Department's reply.  Generally, reviewing courts do not take judicial notice of evidence not presented to the trial court. (*Vons Companies, Inc. v. Seabest Foods, Inc.* (1996) 14 Cal.4th 434, 444, fn. 3; *Weiss v. City of Del Mar* (2019) 39 Cal.App.5th 609, 625.)  We normally " 'consider only matters which were part of the record at the time the judgment was entered.' "  (*Vons Companies, Inc.*, at p. 444, fn. 3.)  And here, the document is cumulative of Willis's complaint's allegations about his still-pending 2013 complaint to the Labor Commissioner, which we accept as true for purposes of City's motion to strike. (*Atwell Island Water District v. Atwell Island Water District* (2020) 45 Cal.App.5th 624, 628; *Clauson v. Superior Court* (1998) 67 Cal.App.4th 1253, 1255.)  Given the state of Willis's pleadings, we need not take judicial notice of this document.

In September 2013 and December 2013, Willis applied for open detective positions in the crimes of violence unit but was passed over in favor of other candidates.

In March 2014, Willis was promoted to corporal. That month, Willis missed receiving an overall exceptional performance review by one criteria; his supervisors rated him as meeting standards. The following month, a Department captain found Willis's appeal of his written reprimand had merit. He advised Willis the document would be removed from his personnel file and destroyed. However, the sustained finding of misconduct remained in Willis's file. Willis received exceptional overall performance ratings on his next few evaluations.

In early 2015, Willis, who had since been elected president of the local police officer's association, learned that Department had implemented a monthly performance review for officers working patrol and traffic. Willis believed the review program was an illegal quota under the Vehicle Code because it collected statistical data, including about arrests and citations. At the next meeting between Department and the association, Willis complained about the review program and its implementation. The management disagreed that the program was illegal. Eventually the police officer's association demanded that Department stop the program.

In July 2015, Willis's supervisors passed him over for a promotion to sergeant. In December 2015, Willis brought a complaint with the Department of Fair Employment and Housing as well as a government tort claim against City, alleging he had suffered continued retaliation by City and Department, evidenced by his 2013 transfer to patrol; his October 2013 written reprimand; denials of requests for transfer he made in 2013,

5

2014 and 2015; and the July 2015 denial of his promotion to sergeant. City deemed all acts occurring before June 29, 2015—six months before the date it received Willis's claim—untimely as occurring beyond the six-month period in which to present a claim under the Government Claims Act. City denied Willis's claim with regard to the July 2015 denial of promotion to sergeant.[4]

In February 2016, Willis filed a complaint against City. He alleged various causes of action, including for retaliation in violation of section 1102.5 for his actions in (1) reporting misconduct of the other officer in 2012 and (2) reporting City's violation of the Vehicle Code for its performance review program.[5] With regard to Willis's section 1102.5 retaliation cause of action, City moved to strike allegations Willis had made of various assertedly retaliatory acts that had occurred before June 24, 2015, including actions taken in response to Willis's 2012 e-mail, on grounds they were time-barred by the six-month government claims presentation requirement and thus irrelevant, false or improper within the meaning of Code of Civil Procedure section 436. In opposition, Willis argued he had pleaded sufficient facts to invoke the continuing violation doctrine set forth in *Richard v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798. Pointing out he alleged he

---

[4]     Willis was again denied promotion in March 2016, but was finally promoted to sergeant in December 2016, after he had initiated his lawsuit against City.

[5]     Willis also brought claims for retaliation and failure to prevent retaliation under Government Code section 12940, subdivisions (h) and (k), remedies under Labor Code section 2699, and violation of Government Code section 3306.5. The jury returned verdicts against him on the retaliation and failure to prevent retaliation claims, but he does not challenge those verdicts on appeal.

6

had a pending administrative complaint to the Labor Commissioner for City's January 2013 retaliation, Willis also argued the six-month period for filing a government claim had been equitably tolled.

The trial court struck the allegations, ruling Willis could recover only for acts of retaliation occurring within six months of the day he filed his government tort claim; that neither tolling of that limitations period nor the continuing violation doctrine applied to excuse Willis's untimely claims.[6]

The matter proceeded to trial on Willis's retaliation causes of action. Willis's section 1102.5 whistleblower claim was based solely on the theory that City denied him

---

[6]    In part, the court's order reads:  "[T]he case authority cited by Willis in support of this argument—*Marcario v. County of Orange* (2007) 155 Cal.App.4th 397, 408-409, does not involve the Government Claims Act and the tolling discussion in that case only applied to causes of action for intentional infliction of emotional distress and civil rights violations tolled by the pendency of a '[Memorandum of Understanding] grievance process,' and the statute of limitations at issue in that case was via [Code of Civil Procedure] section 335.1.  As argued by Defendant City, the facts of *Marcario* do not include any discussion of the Government Claims filing requirements or a cause of action for a violation of Labor Code section 1102.5 for purposes of the tolling discussion.  [¶] The Court finds that Plaintiff Willis'[s] contention that the Government Claim filing requirement and his Labor Code section 1102.5 claim is subject to the continuing tort doctrine is not well taken.  Specifically, the case authority cited by Plaintiff Willis in support does not support his contentions that a Labor Code Complaint tolls the requirements of the Government Claims Act or, that a Labor Code section 1102.5 claim is subject to the continuing tort doctrine, which would excuse Willis'[s] untimely compliance with the Government Claims Act for a Labor Code section 1102.5 action.  [¶] Consequently, the Court finds the City's argument that Plaintiff Willis can only recover in his Labor Code section 1102.5 cause of action for those alleged acts of retaliation that occurred within 6 months of the day he filed his Government Claim is well taken.  As such, City's motion to strike the allegations at paragraphs 8, 9 10, 11, . . . and 14 from Plaintiff's third cause of action for [v]iolation of Labor Code section 1102.5 is granted without leave to amend."

his sergeant promotions in retaliation because of his 2015 complaint about the program that he perceived was an unlawful quota. The trial court instructed the jury that if Willis proved his disclosure of an unlawful act was a contributing factor to City's denials of promotions in July 2015 and March 2016, City was not liable if it proved by clear and convincing evidence it would have denied Willis promotion anyway at those times for legitimate independent reasons.

The jury returned a special verdict finding in Willis's favor that his reporting of City's violation of law was a contributing factor in City's decision to deny him the promotions. It also found City would have denied Willis his promotions in July 2015 or March 2016 anyway for legitimate independent reasons. Accordingly, the court entered judgment in City's favor on Willis's claims, ordering that Willis would take nothing on this complaint and awarding City its costs.

Willis timely filed this appeal from the judgment and the trial court's order granting City's motion to strike.

DISCUSSION

I. *City's Motion to Strike*

Willis contends the trial court erred as a matter of law by striking the portions of his pleading alleging retaliation for his 2012 reports to Department management that another officer had committed timecard fraud and perjury. He first argues the statute of limitations for filing his section 1102.5(b) cause of action was equitably tolled by his June 2013 retaliation complaint to the Labor Commissioner, permitted under Labor Code sections 98 and 98.7, rendering his government tort claim timely as to City's actions. He

8

additionally contends the six-month period to file a government claim had not run because his claims, assertedly based on similar retaliatory acts, were subject to the continuing tort or continuing violation doctrines[7] such that they did not accrue for purposes of filing his government claim. According to Willis, the trial court should have ruled the accrual date for his section 1102.5 action did not occur until July 2015, when he was denied promotion to sergeant.

A. *Standard of Review*

Code of Civil Procedure section 436 permits a court on its own motion or on motion by a party to "[s]trike out all or any part of any pleading not drawn or filed in conformity with the laws of this state, a court rule, or an order of the court." (Code Civ. Proc., § 436, subd. (b).) We review an order striking all or part of a pleading generally for abuse of discretion. (*Brandwein v. Butler* (2013) 218 Cal.App.4th 1485, 1497; *Cal-Western Business Services, Inc. v. Corning Capital Group* (2013) 221 Cal.App.4th 304, 309.) Under that standard, we do not disturb the trial court's order unless a party has

---

[7] Though Willis describes them as "analogous," the continuing tort and continuing violation doctrines are the same. Both delay the running of the statute of limitations until the date of the last injury or when the tortious acts cease in cases involving a course of conduct or continuing wrongs. (See *Aryeh v. Canon Business Solutions, Inc.* (2013) 55 Cal.4th 1185, 1192 (*Aryeh*) [discussing continuing violation doctrine]; *Pugliese v. Superior Court* (2007) 146 Cal.App.4th 1444, 1452 [discussing "continuing tort" doctrine].) The continuing violation theory must be distinguished from the continuous accrual theory for recurring obligations, in which a new cause of action accrues each time a wrongful act occurs, triggering a new limitations period. (*Aryeh*, *supra*, 55 Cal.4th at p. 1199.) That theory, unlike the continuing violation doctrine, permits recovery only for damages arising from those breaches falling within the limitations period. (*Ibid.*) Willis does not invoke continuous accrual.

shown a clear case of abuse as well as a miscarriage of justice. (*Brandwein*, at p. 1497; see also *Blank v. Kirwin* (1985) 39 Cal.3d 311, 331; *Denham v. Superior Court* (1970) 2 Cal.3d 557, 566.) " 'Discretion is abused whenever, in its exercise, the court exceeds the bounds of reason, all of the circumstances before it being considered.' " (*Denham*, at p. 566.) However, to the extent we are required to decide whether the court properly interpreted and applied governing law in concluding a plaintiff has failed to state a cause of action, we review the matter independently. (*Brandwein*, at p. 1497.)

Here, City's motion required the trial court to determine whether the doctrines of equitable tolling and continuing tort/continuing violation warranted striking certain of Willis's complaint's allegations as time-barred for his failure to file a claim within six months under the Government Claims Act. We agree with Willis that the motion presented pure questions of law. Thus, in assessing whether the court properly interpreted and applied the law governing such doctrines to the pleaded facts, we exercise independent review. (*Brandwein v. Butler*, *supra*, 218 Cal.App.4th at p. 1497; *Cal-Western Business Services, Inc. v. Corning Capital Group*, *supra*, 221 Cal.App.4th at p. 309.)

B. *City's Claim of Waiver*

We first dispose of City's claim that Willis has waived his claim of trial court error and failed to meet his appellate burden of establishing a prejudicial abuse of discretion because he did not designate a reporter's transcript of the hearing on its motion to strike. City cites *Jameson v. Desta* (2018) 5 Cal.5th 594, in which our state's high court observed the absence of such a transcript "will frequently be fatal to a litigant's ability to

10

have his or her claims resolved on the merits" (*id*. at p. 608), or that reviewing courts decline to reach the merits absent a transcript " '[i]n numerous situations . . . .' " (*Id*. at p. 609.) City does not explain how the absence of a reporter's transcript *in this case* makes it impossible to resolve the merits of Willis's challenge to the trial court's ruling on City's motion to strike. This leaves us unpersuaded that we cannot do so on the present record, which contains the operative pleading, the moving and opposing papers, as well as the court's minute order on the motion. (Accord, *Bel Air Internet, LLC v. Morales* (2018) 20 Cal.App.5th 924, 933 [rejecting forfeiture argument where respondent did not claim the hearing included any live testimony or the introduction of any other evidence, nor did it identify any particular matter addressed at the hearing that had to be considered to decide the appeal].)

Further, City acknowledges that the rule is subject to an exception where the reviewing court exercises de novo review. As explained above, the issues presented here require independent review. For that reason, and on the state of this record, we reject City's waiver arguments. (*Bel Air Internet, LLC v. Morales*, *supra*, 20 Cal.App.5th at pp. 933-934 [reporter's transcript was not necessary to consider appeal where review was de novo and the appellate record contained trial court's written orders and all evidentiary materials germane to the motion at issue].)

C. *Claim That Willis Failed to Demonstrate Abuse of Discretion Based on Law Presented in the Trial Court*

We likewise reject City's argument that we must assess the trial court's ruling by reviewing only the case law Willis cited below, not authorities he cites in his opening

11

appellate brief.  City's argument is akin to another claim of forfeiture; relying on *Cahill v. San Diego Gas & Electric Co.* (2011) 194 Cal.App.4th 939, it argues that under the applicable abuse of discretion standard of review, Willis must show the trial court's decision "could not reasonably have [been] reached . . . under [the] applicable law."  City maintains "the 'applicable law' under which this Court must evaluate the trial court's decision is the 'applicable law' Willis gave to the trial court" and it is irrelevant that he cites new authorities in his opening brief.  According to City, "[i]f the law Willis provided was unsupportive of his position, then there necessarily was no trial court abuse of discretion, because, at the very least, 'there exist[ed] a reasonable or fairly debatable justification under the law' for the rejection of Willis'[s] arguments."

We cannot agree with this reasoning.  First, City's citation to *Cahill v. San Diego Gas & Electric Co.*, *supra*, 194 Cal.App.4th at page 957 does not support its propositions.[8]  *Cahill* summarizes the abuse of discretion standard of review; it says nothing about the scope of the "applicable law" or whether the reviewing court must restrict its consideration of the law to cases cited by the parties below for purposes of that standard.  To the contrary, it is a settled appellate principle that we will uphold a trial

_____

[8]     City also cites *Cahill v. San Diego Gas & Electric Co.* and another case (*Century Surety Co. v. Pollisso* (2006) 139 Cal.App.4th 922, called into doubt on another point in *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 724, fn. 7) for the proposition that "[t]he *trial court* is not obligated to create arguments for Willis or do its own research." (Italics added.)  *Cahill* discusses the settled notion that an appellant waives points by failing to raise them or cite authority for them *on appeal* and states the *Court of Appeal* need not develop the appellants' arguments.  (*Cahill v. San Diego Gas & Electric Co.*, at p. 956; see also *Century Surety Co. v. Pollisso*, at p. 963.)  The cases do not speak to a trial court's obligations in this regard.

12

court's rule or decision if it is "right upon *any theory of the law applicable to the case*" regardless of the court's reasoning. (See *Transamerica Ins. Co. v. Tab Transportation, Inc.* (1995) 12 Cal.4th 389, 399, fn. 4, italics added; see *Haro v. City of Solana Beach* (2011) 195 Cal.App.4th 542, 549 [demurrer context].) This principle applies even when the matter is governed by the abuse of discretion standard of review. (See *Mendoza v. Ramos* (2010) 182 Cal.App.4th 680, 686, fn. 3.)

Even setting that aside, City's arguments are unavailing because as discussed *ante* the issues presented on City's motion to strike—application of equitable tolling and the continuing tort doctrines to the pleaded facts—are ultimately questions of law that we review de novo. Litigants " ' "may raise for the first time on appeal a pure question of law that is presented by undisputed facts." ' " (*Dudley v. Department of Transp.* (2001) 90 Cal.App.4th 255, 259; see also *Shields v. Hennessy Industries, Inc.* (2012) 205 Cal.App.4th 782, 786.) In such circumstances an appellant may change his theory on appeal and the reviewing court can affirm or reverse on new grounds. (*Dudley*, at pp. 259-260.) Under these principles, we may consider the case law cited by Willis in his opening appellate brief even if he did not cite it to the trial court on City's motion to strike.

D. *The Trial Court Did Not Abuse its Discretion by Striking Paragraphs 8-11 and 14 of the Complaint on Grounds Willis Did Not Timely File a Government Claim as to City's Conduct Described in Those Allegations*

We turn to Willis's arguments that the doctrines of equitable tolling and continuing tort/continuing violation apply to postpone the running of the time by which he was

13

required to present a claim to City under the Government Claims Act, making his December 2015 claim timely as to the allegations of City's actions stricken from the complaint. An overview of that Act is useful to resolve the questions.

1. *Government Claims Act Requirements*

"The Government Claims Act (§ 810 et seq.) 'establishes certain conditions precedent to the filing of a lawsuit against a public entity. As relevant here, a plaintiff must timely file a claim for money or damages with the public entity. (§ 911.2.) . . . .' '[T]he claims presentation requirement applies to all forms of monetary demands, regardless of the theory of the action . . . . The failure to timely present a claim for money or damages to a public entity bars the plaintiff from bringing suit against that entity.' [Citation.] 'The policy underlying the claims presentation requirements is to afford prompt notice to public entities. This permits early investigation and evaluation of the claim and informed fiscal planning in light of prospective liabilities.' " (*California Restaurant Management Systems v. City of San Diego* (2011) 195 Cal.App.4th 1581, 1591 (*California Restaurant*); see also *DiCampli-Mintz v. County of Santa Clara* (2012) 55 Cal.4th 983, 989-990; *J.J. v. County of San Diego* (2014) 223 Cal.App.4th 1214, 1219.) "Claims for personal injury must be presented not later than six months after the accrual of the cause of action, and claims relating to any other cause of action must be filed within one year of the accrual of the cause of action." (*California Restaurant*, at p.

14

1591.)[9]  Accrual for purposes of the Act is the date of accrual that would pertain under the statute of limitations applicable to a dispute between private litigants.  (*Rubenstein v. Doe No. 1* (2017) 3 Cal.5th 903, 906; *Shirk v. Vista Unified School District* (2007) 42 Cal.4th 201, 209-209 (*Shirk*), superseded by statute on other grounds as stated in *Rubenstein*, at p. 914.)  " 'Only after the public entity's board has acted upon or is deemed to have rejected the claim may the injured person bring a lawsuit alleging a cause of action in tort against the public entity.' "  (*California Restaurant*, at p. 1591; *J.J. v. County of San Diego*, at p. 1219.)  The deadline for bringing a lawsuit against the public entity after a claim has been acted upon or deemed denied "is a true statute of limitations . . . . "  (*Shirk*, at p. 209.)

If a claim is not timely presented, a written application may be made to the public entity for leave to present such claim.  (*Le Mere v. Los Angeles Unified School Dist.* (2019) 35 Cal.App.5th 237, 246.)  If the public entity denies the application, section 946.6 authorizes the injured party to petition the court for relief from the claim requirements.  (*Ibid.*)

With certain exceptions (§ 905), the timely filing of a written government claim is an *element* that a plaintiff is required to prove in order to prevail on his or her cause of action.  (*DiCampli-Mintz v. County of Santa Clara*, *supra*, 55 Cal.4th at p. 990.)  Thus, a complaint failing to allege facts demonstrating timely presentation of a claim or that such

_____

9      Willis pleaded he suffered both economic and noneconomic damages of "mental pain and suffering and emotional distress," invoking the six-month period for filing a government claim.

15

presentation was excused is subject to a general demurrer for not stating facts sufficient to constitute a cause of action. (*Shirk*, *supra*, 42 Cal.4th at p. 209.) In *Shirk*, the California Supreme Court emphasized that—contrary to the deadline for filing a lawsuit after a Government Claims Act claim is acted upon or deemed denied—the initial claim presentation deadline is *not* a statute of limitations. (Accord, *Rubenstein v. Doe No. 1*, *supra*, 3 Cal.5th at p. 907 [discussing *Shirk*].) *Shirk* considered whether a 2002 amendment to Code of Civil Procedure section 340.1, which revived certain causes of action for childhood sexual abuse that otherwise would have been barred solely by the applicable statute of limitations, also revived a cause of action for childhood sexual abuse that was barred by the plaintiff's failure to present a timely government claim to the local public entity defendant. (*Shirk*, at pp. 204-205.) The court held it did not: "In plain language, [Code of Civil Procedure section 340.1] expressly limited revival of childhood sexual abuse causes of action to those barred 'solely' by expiration of the applicable statute of limitations. [Citation.] The term ' "[s]tatute of limitations" is the collective term applied to acts or parts of acts that prescribe the periods beyond which a plaintiff may not bring a cause of action.' " (*Id*. at pp. 211-212.) The revival provision of Code of Civil Procedure section 340.1, however, made "no reference whatsoever to any revival of the period in which to present a claim under the government claims statute." (*Shirk,* at p. 212.) A cause of action barred by failure to present a timely claim "is not barred 'solely' by lapse of the applicable statute of limitations . . . . [T]he government claim presentation deadline is not a statute of limitations. Had the Legislature intended to also revive . . . the claim presentation deadline under the government claims statute, it could

16

have easily said so. It did not." (*Id*. at p. 213; accord, *Rubenstein v. Doe No. 1*, at p. 907.)[10]

Public policy supports the "strict application" (*DiCampli-Mintz v. County of Santa Clara*, *supra*, 55 Cal.4th at p. 991, fn. 8) of the claims presentation requirements: " 'Requiring a [claimant] . . . to first present a claim to the entity, before seeking redress in court, affords the entity an opportunity to promptly remedy the condition giving rise to the injury, thus minimizing the risk of similar harm to others. [Citations.] [It] also permits the public entity to investigate while tangible evidence is still available, memories are fresh, and witnesses can be located. [Citations.] Fresh notice of a claim permits early assessment by the public entity, allows its governing board to settle meritorious disputes without incurring the added cost of litigation, and gives it time to engage in appropriate budgetary planning. [Citations.] The notice requirement . . . thus is based on a recognition of the special status of public entities, according them greater protections than nonpublic entity defendants, because . . . public entities . . . will incur costs that must ultimately be borne by the taxpayers.' " (*DiCampli-Mintz*, at p. 991, quoting *Shirk*, at p. 213; see also *Rubenstein v. Doe No. 1*, *supra*, 3 Cal.5th at p. 907.)

---

10    In response to *Shirk*, *supra*, 42 Cal.4th 201, the Legislature prospectively eliminated the claims presentation requirement for "[c]laims made pursuant to section 340.1 of the Code of Civil Procedure for the recovery of damages suffered as a result of childhood sexual abuse," if those claims arose out of conduct occurring on or after January 1, 2009. (§ 905, subd. (m); Stats. 2008, ch. 383, § 1; see *A.M. v. Ventura Unified School Dist.* (2016) 3 Cal.App.5th 1252, 1258.)

17

## 2. *Equitable Tolling*

"The equitable tolling of statutes of limitations is a judicially created, nonstatutory doctrine. [Citations.] It is 'designed to prevent unjust and technical forfeitures of the right to a trial on the merits when the purpose of the statute of limitations—timely notice to the defendant of the plaintiff's claims—has been satisfied.' [Citation.] Where applicable, the doctrine will 'suspend or extend a statute of limitations as necessary to ensure fundamental practicality and fairness.' " (*McDonald v. Antelope Valley Community College Dist.* (2008) 45 Cal.4th 88, 99.) One circumstance in which the doctrine applies is when an injured person who possesses several legal remedies reasonably and in good faith pursues one designed to lessen the extent of his injuries or damage. (*Id*. at p. 100; *Addison v. State of California* (1978) 21 Cal.3d 313, 317-318.) "[T]he effect of equitable tolling is that the limitations period *stops running* during the tolling event, and begins to run again only when the tolling event has concluded. As a consequence, the tolled interval, no matter when it took place, is tacked onto the end of the limitations period, thus extending the deadline for suit by the entire length of time during which the tolling event previously occurred." (*Lantzy v. Centex Homes* (2003) 31 Cal.4th 363, 370-371, fn. omitted.)

In his complaint, Willis alleges: "The City retaliated against Willis by forcing him to transfer from investigations to patrol on January 7, 2013. Willis filed a complaint of retaliation against the City with the Labor Commission, State of California, Department of Industrial Relations, Division of Labor Standards and Enforcement, Case No. 31927-STARCI. This complaint is pending." In reviewing the court's ruling on City's motion to

18

strike, we accept these allegations as true.  (*Clauson v. Superior Court*, *supra*, 67 Cal.App.4th at p. 1255 [reviewing court will "read allegations of a pleading subject to a motion to strike as a whole, all parts in their context, and assume their truth"].)

Charactering the six-month period by which he was required to file his government tort claim under section 911.2 as a statute of limitation, Willis maintains that the pendency of his Labor Commission complaint tolled that period such that his December 2015 government claim was timely as to all of the retaliatory conduct alleged in his complaint.  He maintains that this court's decision in *California Restaurant*, *supra*, 195 Cal.App.4th 1581 holds that equitable tolling may apply to the limitations period for filing government tort claims against a public entity if the elements for tolling are present.  Willis argues he established the elements of equitable tolling by reason of the alternate legal remedies presented to him, which he pursued in good faith without prejudice to City.  (See *San Pablo Bay Pipeline Co., LLC v. Public Utilities Com.* (2015) 243 Cal.App.4th 295, 316 ["three elements of equitable tolling are (1) timely notice of the claim to the defendant, (2) lack of prejudice to the defendant, and (3) reasonable and good faith conduct by the claimant"].)

We conclude the doctrine of equitable tolling cannot be invoked to suspend section 911.2's six-month deadline for filing a prerequisite government claim.  As we have explained, contrary to Willis's framing otherwise, the six-month period of section 911.2 is not a statute of limitations (*Shirk*, *supra*, 42 Cal.4th at p. 213) to which tolling rules might apply.  (Accord, *Bjorndal v. Superior Court* (2012) 211 Cal.App.4th 1100, 1109 [doctrine of equitable tolling not applicable to time by which party was required to

19

pursue administrative remedy as prerequisite to filing suit; distinguishing such administrative deadlines from judicial statutes of limitation]; compare *Addison v. State of California*, *supra*, 21 Cal.3d at p. 321 [applying equitable tolling to statute of limitation for *filing a lawsuit* against the State to benefit plaintiffs who had already filed timely damage claims with both the state and county pursuant to the provisions of the Tort Claims Act], cited with approval in *J.M. v. Huntington Beach Union High School Dist.* (2017) 2 Cal.5th 648, 657 [doctrine of equitable tolling may apply to the *limitation periods* imposed by the government claims statutes].)  In these circumstances, equitable tolling "contravenes clear legislative policy" (*Lantzy v. Centex Homes*, *supra*, 31 Cal.4th at p. 371) and thus should not be applied.  "As with other general equitable principles, application of the equitable tolling doctrine requires a balancing of the injustice to the plaintiff occasioned by the bar of his claim against the effect upon the important public interest or policy expressed by the [Government] Claims Act limitations statute." (*Addison v. State of California*, at p. 321.)  Application of tolling to the claims presentation deadline would undercut the public policies and purposes that require that deadline be "strict[ly]" applied. (*DiCampli-Mintz v. County of Santa Clara*, *supra*, 55 Cal.4th at p. 991, fn. 8.)

These policies and purposes underscore the unique status of public entity defendants.  The purpose of the claims statutes is not to prevent surprise like judicial statutes of limitation.  (See *Elkins v. Derby* (1974) 12 Cal.3d 410, 417 [primary purpose of statute of limitations is to " '[prevent] surprises through the revival of claims that have been allowed to slumber until evidence has been lost, memories have faded, and

20

witnesses have disappeared' "]; *Jolly v. Eli Lilly & Co.* (1988) 44 Cal.3d 1103, 1124.) Rather, the purpose is " ' "to provide the public entity sufficient information to enable it to adequately investigate claims and to settle them, if appropriate, without the expense of litigation. [Citations.] It is well-settled that claims statutes must be satisfied even in face of the public entity's actual knowledge of the circumstances surrounding the claim." ' " (*DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 991.) " ' "Such knowledge—standing alone— constitutes neither substantial compliance nor basis for estoppel." ' " (*J.J. v. County of San Diego*, *supra*, 223 Cal.App.4th at p. 1219.) " 'The claims statutes also "enable the public entity to engage in fiscal planning for potential liabilities and to avoid similar liabilities in the future." [Citations.]' [¶] . . . Moreover, the intent of the Government Claims Act is 'not to expand the rights of plaintiffs against government entities. Rather, the intent of the act is to confine potential governmental liability to rigidly delineated circumstances.' " (*DiCampli-Mintz*, at p. 991.)

Here, the important policy considerations behind the claims statutes—giving a public entity " 'prompt notice' " of a claim to permit " 'early investigation and evaluation' " (*California Restaurant*, *supra*, 195 Cal.App.4th at p. 1591) as well as orderly fiscal planning for the protection of taxpayer funds (*DiCampli-Mintz*, *supra*, 55 Cal.4th at p. 992; *Addison v. State of California*, *supra*, 21 Cal.3d at p. 320) would not be served by tolling the government claim deadline while a plaintiff pursues other legal remedies against the government defendant. The timely filing of a government claim is intended to permit the government entity to avoid incurring the expense of litigation or the type of investigation and decision that would ensue in connection with a Labor Code

21

section 98.7 Labor Commission complaint. (See *Le Mere v. Los Angeles Unified School Dist.*, *supra*, 35 Cal.App.5th at p. 247 [barring cause of action alleging whistleblower retaliation in violation of section 1102.5 for failing to file a timely government claim; such a plaintiff cannot cure her failure by filing a post-lawsuit claim as it is too late to provide the public entity sufficient information to investigate and settle claims without the expense of litigation]; *Murray v. Oceanside Unified School Dist.* (2000) 79 Cal.App.4th 1338, 1359 [pointing out a Labor Code section 98.7 complaint with the Division of Labor Standards Enforcement involves a "process of investigation and decision by the Labor Commissioner"].)[11]

Nothing in this court's decision in *California Restaurant* contradicts our conclusion. In *California Restaurant*, this court *declined* to apply equitable tolling beyond the context of judicial statutes of limitations so as to suspend the government claims presentation time period for a party that had not timely filed its own government claim. (*California Restaurant*, 195 Cal.App.4th at pp. 1586, 1597.) That party—a commercial water user—sought to rely on an earlier class action lawsuit filed by residential water users to argue it was relieved from the deadline for filing its own

---

[11]     We observe that Willis maintains the Labor Commissioner complaint put City "on notice" of his retaliation claim. But he does not cite authority for the proposition, and service of a complaint with the *state Labor Commissioner* does not comply with Government Claims Act presentation requirements for purposes of a claim against City. (See § 915, subd. (a) [requiring service of a claim against a local public entity to be made on the "clerk, secretary or auditor thereof," or to the "governing body"].) Nor is it the equivalent of "substantial compliance" with the Act. (See *Johnson v. San Diego Unified School Dist.* (1990) 217 Cal.App.3d 692, 698 [substantial compliance with the Act is not applicable to a claim made to the wrong entity].)

government claim. (*Id*. at pp. 1589-1590.) This court observed that while authorities applied equitable tolling in the class action setting to toll a statute of limitations (*id*. at p. 1595), there was no such authority in the context of government claim requirements. (*Id*. at p. 1596.) Ultimately, we were "unpersuaded that the . . . tolling doctrine can be transferred from its limited context—tolling of statutes of limitations for class members if the class-wide pursuit of the claim falters—to also toll the distinct time limits for filing a governmental claim . . . . Because the governmental claim requirement serves purposes distinct from and in addition to purposes served by general statutes of limitations, we are not persuaded by [the parties'] argument that tolling principles applicable to the latter should be superimposed on the former." (*Id*. at p. 1600.)

3. *Continuing Tort/Continuing Violation Doctrine*

Generally, a " 'cause of action accrues "when [it] is complete with all of its elements"—those elements being wrongdoing, harm, and causation.' [Citation.] This is called the 'last element' accrual rule: ordinarily, the statute of limitations runs from 'the occurrence of the last element essential to the cause of action.' " (*Aryeh*, *supra*, 55 Cal.4th at p. 1191.) An exception to this rule is the continuing violation doctrine. (*Id*. at p. 1192.) "The continuing violation doctrine aggregates a series of wrongs or injuries for purposes of the statute of limitations, treating the limitations period as accruing for all of them upon commission or sufferance of the last of them." (*Ibid*., citing *Richards v. CH2M Hill, Inc.* (2001) 26 Cal.4th 798, 811-818 (*Richards*); see also *Morgan v. Davidson* (2018) 29 Cal.App.5th 540, 560.) Consequently, the continuing violation doctrine "allows liability for unlawful . . . conduct occurring outside the statute of

23

limitations if it is sufficiently connected to unlawful conduct within the limitations period." (*Richards*, at p. 802; see also *Yanowitz v. L'Oreal USA, Inc.* (2005) 36 Cal.4th 1028, 1056 (*Yanowitz*).) For the continuing violation doctrine to apply, a plaintiff must show the defendant engaged in "a pattern of reasonably frequent and similar acts [that] may, in a given case, justify treating the acts as an indivisible course of conduct actionable in its entirety, notwithstanding that the conduct occurred partially outside and partially inside the limitations period." (*Aryeh*, at p. 1198; *Morgan v. Davidson*, at p. 560.)

Unlike equitable tolling, the continuing tort/continuing violation theory affects a cause of action's accrual. (*Aryeh*, *supra*, 55 Cal.4th at p. 1192; see *Mitchell v. State Dept. of Public Health* (2016) 1 Cal.App.5th 1000, 1011 ["tolled" in the context of statutes of limitation means "suspended" or "stopped"].) Thus, we must decide whether Willis has established the requirements for that doctrine, because the six-month government claim presentation period is triggered by "the accrual of the cause of action." (§ 911.2, subd. (a).) If the continuing violation doctrine postpones accrual to a point within six months or less of Willis's government claim presented in December 2015, then Willis's government claim might be timely.

In *Yanowitz*, *supra*, 36 Cal.4th 1028, the California Supreme Court held in a summary adjudication context that the continuing violations doctrine applied to retaliation claims as long as "the requisite showing of a continuing course of conduct has been made." (*Id*. at p. 1059.) It reiterated the relevant factors of the doctrine as described in *Richards*: a court must consider "whether 'the employer's actions . . . (1) [were]

24

sufficiently similar in kind—recognizing . . . that similar kinds of unlawful employer conduct, such as acts of harassment or failures to reasonably accommodate disability, may take a number of different forms [citation]; (2) have occurred with reasonable frequency; (3) and have not acquired a degree of permanence.' " (*Yanowitz*, at p. 1059, quoting *Richards*, *supra*, 26 Cal.4th at p. 823.)  The *Yanowitz* plaintiff alleged her employer's actions "formed a pattern of systematic retaliation for her opposition to [a] discriminatory directive" making it proper for the California Supreme Court to consider the allegations "collectively." (*Id*. at p. 1039.)  The court applied the doctrine because the plaintiff's complaint reflected a "retaliatory course of conduct rather than a discrete act of retaliation" arising from conduct of her employer soliciting negative comments about her from her subordinates, frequently criticizing her management style, and refusing to allow her to answer the charges, resulting in her departure. (*Id*. at pp. 1039-1040.)  It concluded:  "In sum, Yanowitz alleges that in the course of these actions, [her employer] solicited or fabricated negative information about Yanowitz and then used this information to intimidate, disempower, and punish Yanowitz.  We conclude that a reasonable trier of fact could find that the solicitation of negative information from subordinates, the criticism of Yanowitz both verbally and in written memos based in part on the negative information obtained from her subordinates, and the subsequent refusal to allow Yanowitz to answer the charges leveled against her, were similar in kind and occurred with sufficient frequency to constitute a continuous and temporally related course of conduct.  Moreover, a reasonable trier of fact could conclude Yanowitz was not on notice that further conciliatory efforts would be futile, until her final attempts to meet

25

with company representatives to discuss the criticism directed at her were finally rebuffed." (*Id*. at pp. 1059-1060.) The court held it could not decide on those facts that the continuing violation doctrine was inapplicable as a matter of law. (*Id*. at p. 1060.)

Here, in the context of City's motion to strike, we examine Willis's pleadings to decide whether they may be reasonably read to meet the *Richards* criteria for applying the continuing violation doctrine.

Willis alleges that:

• In 2012, he was assigned to a detective position in Department's crimes of violence unit. In that same year, he reported to Department's command staff that another sworn police officer had committed fraud on his timecard, had been dishonest and had violated the Penal Code by committing perjury. He also testified in a City Equal Opportunity Employment (EEO) investigation concerning claims by a Mexican/American/Hispanic detective of race and national origin discrimination and that two officers, including the officer Willis had earlier accused of misconduct, had created a hostile work environment for him based on his race and national origin. On information and belief, the EEO complaint was sustained on some of the charges against the two officers.

• City retaliated against him by forcing him in January 2013 to transfer from investigations to patrol, for which he filed a complaint of retaliation against the City with the Labor Commission.

- City further retaliated against him on October 1, 2013, by issuing a written reprimand to him for his alleged conduct in an internal affairs investigation, but in April 2014, after he appealed, the letter was removed and destroyed from his personnel file.

- In 2013, 2014 and 2015, Willis attempted to get the City to remedy the January 2013 transfer by applying for transfers back to either the crimes of violence unit or general investigations. Specifically, around October 2013, Willis and four other officers applied for two openings in the crimes of violence unit, but the City gave the position to lesser-qualified officers with no prior experience like Willis had.

- In January 2014, Willis again applied for another opening and a transfer back to the crimes of violence unit, but he was denied the transfer again in favor of a less-qualified officer.

- Around November 2014, Willis applied for a transfer to a general investigations position, but was once again denied a transfer to the position that was given to a far less-qualified officer, who unlike Willis had never been a detective.

- In March 2015, Willis again applied for a transfer to the general investigations unit, but he was denied in favor of a less qualified officer who was given the position in October or November 2015.

- Willis again applied for a sergeant promotion and was the only candidate rated highly qualified, but he learned in July 2015 that City denied him the promotion. In August 2015, Willis complained about the denial to higher-ups as well as an employee in City's human resources department who advised him she was passing it on to City's human resources manager. Thereafter Willis filed his December 2015 complaint with the

27

Department of Fair Employment and Housing and at the same time presented his government claim.

We need not decide whether these allegations, liberally construed (Code Civ. Proc., § 452), could be read to describe a series of related acts—reduction of position and denials of promotions—against Willis that occurred with reasonable frequency so as to meet the first two requirements of the continuous violation doctrine. (*Yanowitz*, *supra*, 36 Cal.4th at p. 1059; *Richards*, *supra*, 26 Cal.4th at p. 823; *Morgan v Regents of University of California* (2000) 88 Cal.App.4th 52, 64 [continuing violation doctrine may be established by a " 'series of related acts against a single individual' "]; see *Brome v. California Highway Patrol* (2020) 44 Cal.App.5th 786, 799 [officer who was denied backup assistance on a daily basis and exposed to "ongoing" or "very common" use of derogatory language showed similar conduct occurring with reasonable frequency]; *Dominguez v. Washington Mutual Bank* (2008) 168 Cal.App.4th 714, 721-724 [discussing cases involving similarity and frequency prongs of *Richards*].) Willis's allegations do not in any event meet the final *Richards* requirement that City's actions in either reassigning him or denying him promotions lacked "a degree of permanence." (*Richards*, at p. 823.) "Permanence" in this context means that an employer's actions make clear to a reasonable employee that any further efforts to end the alleged unlawful conduct will be futile, or the employer "mak[es] clear to the employee in a definitive manner" that the employee's requests have been rejected. (*Ibid.*; see *Brome v. California Highway Patrol*, at p. 799; *Cucuzza v. City of Santa Clara* (2002) 104 Cal.App.4th 1031, 1042.) Under *Richards*, the statute of limitations begins to run either when the unlawful

28

course of conduct ends, "*or* when the employee is on notice that further efforts to end the unlawful conduct will be in vain." (*Richards*, at p. 823; *Cucuzza*, at p. 1042.)

Willis unambiguously alleges that after City denied him transfer and promotion in 2013, 2014 and early 2015, City hired a different, less-qualified officer. There can be no other conclusion in view of that allegation but that City's independent promotion decisions each became permanent when a different applicant was put in the position. (Accord, *Jumaane v. City of Los Angeles* (2015) 241 Cal.App.4th 1390, 1402-1404 [harassment and retaliation occurring in 1990's became permanent in 1999 once plaintiff served a 10-day suspension ordered by his chief after having endured reprimands, disciplines, transfers and denials of grievances in response to his discrimination complaints]; *Cucuzza v. City of Santa Clara*, *supra*, 104 Cal.App.4th at p. 1043 [plaintiff's loss of job duties for allegedly discriminatory reasons became permanent when her job title changed; "[w]e can conceive of little that would be a more definitive denial of plaintiff's request to perform certain job duties than an offer to transfer her out of the job altogether"]; compare *Brome v. California Highway Patrol*, *supra*, 44 Cal.App.5th at p. 799 [jury could find the absence of permanence where officer's supervisors never indicated they had reached an impasse on his claims of harassment, were rejecting his concerns, or that he should leave or give up].)

There are no other allegations that suggest Willis could have perceived City's actions on these discrete job openings as anything other than definitive and final. The fact Willis continued to apply for promotions in response to new openings does not establish a lack of permanence as to his past applications; we decline to hold his conduct

in applying for future jobs revived his claims of retaliation for the City's prior decisions. (Accord *Morgan v. Regents of University of California*, *supra*, 88 Cal.App.4th at pp. 66-67 [continuing violation doctrine not implicated for University's " 'isolated employment decisions' " not to rehire the plaintiff, and "each time [plaintiff] was informed he was not being hired for a position to which he had applied, he was, or should have been, aware this action might to contrary to his preferential rehire rights" such that he "should have been aware of his potential claim far earlier than it was asserted"].)

Given these allegations, we conclude City's actions acquired a degree of permanence so as to preclude application of the continuing violation doctrine. (*Richards*, *supra*, 26 Cal.4th at p. 823.) Under the circumstances, the trial court correctly rejected its application to Willis's section 1102.5 retaliation cause of action, which had accrued for purposes of the six-month government claim presentation deadline at the time City denied Willis a promotion and hired a different person for the job. The court thus did not abuse its discretion by striking paragraphs 8, 9, 10, 11 and 14 from Willis's complaint, which alleged conduct for which Willis did not timely present a government claim. (See *Williams v. Superior Court* (2017) 3 Cal.5th 531, 540 [scope of discretion always resides in the particular law being applied such that a trial court's decision implicitly or explicitly resting on an error of law necessarily constitutes an abuse of discretion].)[12]

---

[12]    Willis points out in his reply brief that the trial court reached a different conclusion as to his first and second causes of action for violations of the Fair Employment and Housing Act, holding the continuing violation doctrine applied because paragraphs 8 through 11 and 14 alleged acts "similar in kind," "relat[ing] to retaliation," and occurring with "reasonable frequency." The court ruled "the allegations of retaliation

30

## II. *Court's Evidentiary Rulings*

### A. *Background*

Before trial, City moved in limine to preclude Willis from presenting evidence or argument that City had violated POBRA, on grounds the trial court in connection with City's earlier summary judgment motion had denied Willis leave to amend to add a cause of action alleging it violated section 3304, subdivision (d)(1) of that Act. Willis opposed City's motion. Willis argued there was evidence that City had violated POBRA by using his June 2012 e-mail as the basis for denying his promotion to sergeant in July 2015 and March 2016 even though he was not reprimanded for it, which, according to Willis, was highly probative circumstantial evidence that City had to create a pretextual reason for its actual retaliatory purpose. Additionally, City moved in limine to implement the court's ruling on its motion to strike, asking the court to exclude evidence of Willis's report of generalized misconduct of the officer who was the subject of Willis's June 2012 e-mail.

---

demonstrate a state of permanence of the retaliatory conduct as of July 21, 2015." It denied City's motion to strike as to those causes of action, ruling "the alleged acts of retaliation are sufficiently linked to the alleged unlawful conduct within the limitations period." Willis argues that had the trial court not determined the doctrine was inapplicable to his whistleblower retaliation cause of action, it "[n]o doubt . . . would have determined . . . the accrual date for the section 1102.5(b) action was the date of the last alleged wrongful act, July 21, 2015." However, because application of the continuing violation doctrine to Willis's pleading presents a question of law, we are not bound by the trial court's reasoning. It is a settled appellate principle that reviewing courts uphold judgments or orders if correct for any reason, regardless of the correctness of its grounds, as " ' "[i]t is judicial action and not judicial reasoning which is the subject of review . . . ." ' " (See *People ex rel. Gallo v. Acuna* (1997) 14 Cal.4th 1090, 1119, fn. 4; *Gaynor v. Bulen* (2018) 19 Cal.App.5th 864, 876 [reviewing order on special motion to strike].)

At the same time, Willis moved in limine to exclude evidence of the June 2012 e-mail. He argued the e-mail and evidence City used it as justification for denying him promotions to sergeant in July 2015 and March 2016 was irrelevant in part because City had not completed any investigation into the e-mail within one year of its discovery, and thus using it to deny him promotion violated section 3304, subdivision (d)(1) of POBRA. He further argued the evidence should be excluded under Evidence Code section 352 because its probative value was far outweighed by the substantial prejudicial effect from its admission. In opposition, City argued the e-mail was central to its section 1102.6 affirmative defense that it had a legitimate, independent reason for its decision. It pointed out Willis's supervisors would testify that their decision to pass Willis over for sergeant was based not on misconduct findings of the internal affairs investigation, but the "totality of the circumstances" surrounding his sending the pseudonymous e-mail. City presented deposition testimony of a supervisor who testified the circumstances affected his perception of Willis's ability to be a supervisor with respect to emotional intelligence, decision-making, and character. That witness testified in part: "So, for me, my decision was a character issue. That's—that was my decision. My decision was based on his character because supervisors, again, are in a position of power. They're responsible for developing, training and mentoring all their staff and you must have a good character to do that. [¶] . . . [¶] . . . [S]upervisors are in a position where they can really impress their will upon everybody that works for them on a daily basis and to be put in that position. I think you need to have good character."

32

After hearing lengthy arguments on the matter, the trial court denied Willis's motion, permitting City to admit evidence of the June 2012 e-mail. It granted City's motions to exclude any evidence of POBRA as well as evidence of Willis's 2012 complaints about the other officer's general misconduct.

B. *Contentions*

Willis contends the court prejudicially abused its discretion when it excluded evidence that City's promotion decisions violated section 3304, subdivision (d)(1) of POBRA. Pointing out City prevailed in the action because it was permitted to show, and the jury found, his e-mail was "a legitimate, independent reason" for its decisions (§ 1102.6[13]), Willis argues the record shows City did not in fact have a legitimate reason to deny his promotion to sergeant by reason of its POBRA violation, thus the court erred by permitting City to use his 2012 pseudonymous e-mail as the reason for its decision. He maintains that under section 3304, subdivision (d)(1) of POBRA, unless a public agency charges and investigates a police officer for an act or other misconduct within one year after it discovers the wrongful conduct, that act or misconduct cannot be the basis for denying that officer a promotion. Willis argues the facts are undisputed that

---

[13]    Labor Code section 1102.6 sets out the employer's burden of proof where a plaintiff shows an action prohibited by section 1102.5 was a contributing factor in the adverse employment action. In that event, "the employer shall have the burden of proof to demonstrate by clear and convincing evidence that the alleged action would have occurred for legitimate, independent reasons even if the employee had not engaged in activities protected by Section 1102.5." (Lab. Code, § 1102.6.) Here, the jury unanimously found City would have denied Willis promotions in July 2015 and March 2016 for legitimate independent reasons from Willis's disclosure of what he believed was an unlawful quota.

33

Department management never charged him with misconduct for the 2012 e-mail and he was not disciplined for it, thus Department missed the one-year limitations period for charging and investigating him such that its management was prohibited from using the e-mail to deny him his promotion.  Willis asserts "[a]s a matter of law, the evidence the City may have violated [POBRA] when it denied Willis the promotions to sergeant was relevant and should not have been excluded from evidence."

C.  *POBRA*

"POBRA 'codif[ies] "a list of basic rights and protections which must be afforded all peace officers . . . by the public entities [that] employ them." '  [Citation.]  POBRA's goal is 'to assure the "maintenance of stable employer–employee relations," and thus to secure "effective law enforcement . . . services" for "all people of the state." ' "  (*Conger v. County of Los Angeles* (2019) 36 Cal.App.5th 262, 269.)  One of POBRA's procedural protections is to have speedy adjudication of conduct that could result in discipline.  (*Daugherty v. City and County of San Francisco* (2018) 24 Cal.App.5th 928, 947.)

Accordingly, section 3304, subdivision (d)(1) provides in part:  "Except as provided in this subdivision and subdivision (g), no . . . denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct . . . .  In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed discipline by a Letter of Intent or Notice of

34

Adverse Action articulating the discipline that year, except as provided in paragraph (2). The public agency shall not be required to impose the discipline within that one-year period." " '[T]he apparent purpose of [section 3304,] subdivision[ (d)(1)], . . . is to ensure that an officer will not be faced with the uncertainty of a lingering investigation, but will know within one year of the agency's discovery of the officer's act or omission that it may be necessary for the officer to respond in the event he or she wishes to defend against possible discipline.' " (*Ochoa v. County of Kern* (2018) 22 Cal.App.5th 235, 245, quoting *Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 322, superseded in part as stated in *Squire v. County of Los Angeles* (2018) 22 Cal.App.5th 16, 23.)

In *Conger v. County of Los Angeles*, *supra*, 36 Cal.App.5th 262, the Court of Appeal addressed whether an officer's denial of promotion was "on grounds other than merit" within the meaning of section 3304, subdivision (b) of POBRA. (*Id*. at pp. 272-273.) Giving the language its " 'plain and commonsense meaning,' " the court held "at minimum, factors constituting merit include those ' "substantially related to successful performance of the duties of the position." ' This is consistent with California's constitutional 'merit principle,' under which candidates for civil service positions are evaluated based on ' " 'education, training and experience' " ' rather than factors unrelated to the job such as political favoritism." (*Id*. at p. 273, fn. omitted.) In *Conger*, the plaintiff officer, who was denied promotion to lieutenant by reason of his failure to report and document a use of force (*id*. at p. 267), did not dispute his chief's sworn assertion that lieutenants held high level supervisory positions in the department. (*Ibid*.) The chief averred that " 'good professional judgment is an important job requirement going to the

35

merits of that position' "; he also "emphasized the importance of 'the proper reporting of the use of force' and that supervisory personnel must be 'sensitive to these issues, to ensure the proper functioning of the Department, the accurate reporting of such incidents, the safety of personnel and the public, and also for purposes of avoiding liability.' " (*Id.* at p. 268.) In view of that record, the appellate court observed: "The ability to comply with department procedures and ensure subordinates follow those procedures is substantially related to successful performance in a supervisory position. [Plaintiff] did not demonstrate competence as a supervisor when he failed to report a use of force per Department policy and failed to direct his subordinates to do so." (*Id.* at p 273.)

D. *Analysis*

" 'No evidence is admissible except relevant evidence.' [Citation.] 'Relevant evidence is evidence "having any tendency in reason to prove or disprove any disputed fact that is of consequence to the determination of the action." ' [Citation.] 'The court in its discretion may exclude evidence if its probative value is substantially outweighed by the probability that its admission will (a) necessitate undue consumption of time or (b) create substantial danger of undue prejudice, of confusing the issues, or of misleading the jury.' [Citation.] 'In general, the trial court is vested with wide discretion in determining relevance and in weighing the prejudicial effect of proffered evidence against its probative value. Its rulings will not be overturned on appeal absent an abuse of that discretion.' " (*People v. Hardy* (2018) 5 Cal.5th 56, 87.) Under this appellate standard, the court's ruling " ' "will not be disturbed except on a showing the trial court exercised

36

its discretion in an arbitrary, capricious, or patently absurd manner that resulted in a manifest miscarriage of justice." ' "  (*People v. Case* (2018) 5 Cal.5th 1, 46.)

The trial court in ruling on City's and Willis's motions did not articulate a substantive reason for its decision:  "[Willis's motion in limine] is denied.  This evidence [the June 2012 e-mail] is going to come in and we're not going to hear anything—we're not even going to hear anything about POBR[A].  We're not going to hear it.  It's not relevant.  They are going to hear the evidence."  Reviewing the ruling itself and not the court's rationale (*Transamerica Ins. Co. v. Tab Transportation, Inc.*, *supra*, 12 Cal.4th at p. 399, fn. 4), we cannot say the trial court abused its broad discretion in excluding evidence of POBRA or POBRA violations by City, while at the same time permitting City to present evidence of Willis's June 2012 e-mail as the basis for Department's July 2015 and March 2016 promotion decisions.  Willis's challenge to the court's evidentiary ruling turns on the premise that Department's reliance on his June 2012 e-mail to deny his promotions was illegitimate or false by reason of the POBRA violation, eliminating the e-mail's probative value to City's section 1102.6 defense of having a "legitimate independent reason" for the employment decision.  He argues in part:  "The evidence that the City violated the POBR[A] in denying the promotions would have provided evidence the employer's stated reason for taking action against an employee was false, such as it conflicted with other evidence and tended to show the employer concocted the true reasons for its actions and supported a conclusion the actual reason was retaliation."

But the premise fails under the plain statutory language of section 3304, subdivision (d), which like subdivision (b), carves out from its terms promotion denials

"on grounds other than merit." Here, City demonstrated to the trial court on its in limine motion that the Department supervisors based their promotion decisions on Willis's perceived lack of emotional intelligence, poor decision-making, and the reflection on his character stemming from his sending the June 2012 e-mail, which impacted his ability to supervise other officers. The record before the court permitted it to reasonably conclude that Department's decision to deny Willis promotion was a merits-based decision based on job-related factors (accord, *Conger v. County of Los Angeles*, *supra*, 36 Cal.App.5th at pp. 272-273), not a decision made "on grounds other than merit." Thus, City's failure to timely investigate Willis's misconduct—even assuming that was the case—did not invalidate its promotion decisions under section 3304, subdivision (d). On the same evidence, the court reasonably found Willis's June 2012 e-mail had a tendency to prove that City had a "legitimate independent reason" for its promotion decision apart from Willis's protected whistleblowing.

In short, the trial court did not manifestly abuse its discretion in its evidentiary rulings.

DISPOSITION

The judgment is affirmed.

O'ROURKE, J.

WE CONCUR:

McCONNELL, P. J.

IRION, J.

Filed 5/12/20

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA

| | |
|---|---|
| JAMES WILLIS, | D074988 |
| Plaintiff and Appellant, | (Super. Ct. No. 37-2016-00004240-CU-OE-NC) |
| v. | |
| CITY OF CARLSBAD, | ORDER GRANTING REQUEST AND CERTIFYING OPINION FOR PUBLICATION |
| Defendant and Respondent. | |

THE COURT:

The opinion in this case filed April 22, 2020, was not certified for publication. It appearing the opinion meets the standards specified in California Rules of Court, rule 8.1105(c), the respondent's request pursuant to California Rules of Court, rule 8.1120(a) for publication is GRANTED.

IT IS HEREBY CERTIFIED that the opinion meets the standards for publication specified in California Rules of Court, rule 8.1105(c); and ORDERED that the words "Not to be Published in the Official Reports" appearing on page one of said opinion be deleted and the opinion herein to be published in the Official Reports.

McCONNELL, P. J.

Copies to: All parties