Filed 11/3/22

**CERTIFIED FOR PUBLICATION**

**IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA**

**FOURTH APPELLATE DISTRICT**

**DIVISION TWO**

|  |  |
|---|---|
| ANDREW SHOUSE, | |
| Plaintiff and Appellant, | E076975 |
| v. | (Super.Ct.No. RIC2001031) |
| COUNTY OF RIVERSIDE et al., | OPINION |
| Defendants and Respondents. | |

APPEAL from the Superior Court of Riverside County.  Irma Poole Asberry, Judge.  Affirmed.

Stone Busailah, Robert M. Rabe, Michael P. Stone, and Muna Busailah for Plaintiff and Appellant.

Liebert Cassidy Whitmore, Donald V. Le and Jennifer M. Rosner for Defendants and Respondents.

Petitioner, Andrew Shouse, was terminated from his employment as a captain of the Riverside County Sheriff's Office (RCSO, the Department, or respondent), following

1

an administrative hearing at which findings were made that petitioner engaged in improper sexual relationships with subordinates under his command, misappropriated county equipment and electronic mail for his personal use, was insubordinate in violating a direct order prohibiting him from contacting any person with whom he had had a personal relationship during the pendency of the investigation, and unbecoming conduct discrediting the Sheriff's Department. Following an administrative appeal, the findings were sustained. Petitioner filed a petition for writ of mandate seeking review of his dismissal, and, upon denial of that petition, he appeals.

On appeal, the sole legal issue presented is whether petitioner's rights pursuant to the Public Safety Officer's Bill of Rights (POBRA) were violated where the investigation into his alleged improper conduct was not completed within one year of discovery. We affirm.

## BACKGROUND

Because petitioner has limited his challenge on appeal to the fairness of the procedures employed leading up to his dismissal, specifically a claim that the Department violated his rights by failing to complete the investigation within one year of discovery of the improper conduct, we provide only a general summary of the background information.

The amended petition alleges petitioner was employed by the Riverside County Sheriff's Department as a captain, until he was notified by the department of his termination, after 22 years of service. Notice of intent to terminate was served on

petitioner on April 10, 2017, for violations of Article XIV, section 2 of the Riverside County Memorandum of Understanding (MOU), including inefficiency or negligence in performance of duty, neglect of duty, insubordination, willful violation of an employee regulation, discourteous treatment of the public or other employees, and conduct during or outside of duty which adversely affects employee performance or operation of the department in which they are employed.  It further alleged petitioner violated General Order Nos. 102.01, 105.07, 105.09, 106.05, 202.03, 202.04, 202.11, 202.47, 214.03, 313.03, and 1200.4.  It also alleged petitioner violated Department Directives, No. 09-024, which prohibits employees from directly supervising another employee who is a relative or with whom they are involved in a personal relationship.

The notice summarized the following information:  In April or May of 2016, Chief Lyndon "Ray" Wood learned of a rumored intimate relationship involving petitioner and Deputy Karen Birchard.  The rumors indicated Birchard was saving photographs or text messages on her cell phone, which Wood feared would be used in a legal action against the department or that she was about to engage in conduct that would undermine petitioner's authority, creating conflicts of interest.

In May 2016, Wood met petitioner for lunch and asked him if he was then or had ever had a sexual relationship with Deputy Birchard.  Petitioner told him he had in the past but was not then engaged in a relationship.  Petitioner was involved with Birchard from 2010 to 2015, while she was under petitioner's chain of command.

3

Shortly thereafter, on May 20, 2016, Chief Deputy Wood also learned of an alleged relationship between petitioner and Deputy Roxanne Salas from the Colorado River Station. Chief Deputy Wood arranged to meet with Deputy Salas, who admitted she had an intimate relationship with petitioner.

Because of the potential conflicts of interest involved, a personnel investigation was initiated against petitioner, in which investigators interviewed Deputy Birchard, Deputy Salas, Office Assistant II Nicole Miller, Community Service Officer II Allison Kabbara, Community Service Officer II Jessica Herrera and Investigator Jennifer Higgins. Coupled with petitioner's own admissions, the administrative investigation established petitioner had maintained multiple sexual and/or "sexting" relationships with the female employees in violation of numerous department policy and general orders.

On June 3, 2016 petitioner was given written notice that he was the subject of an administrative internal affairs investigation into allegations of potential violations of Department policy by engaging in inappropriate relationships with other department employees/ subordinates. The notice ordered petitioner not to discuss, text, message, email, or by way of third parties communicate with any female department members with whom petitioner had any dating, sexual, intimate or other type of relationship that is, or was, more than a mere friend. Petitioner signed the written order acknowledging receipt of the same on June 3, 2016.

The investigation went forward, culminating in a detailed report issued on April 10, 2017, concluding that allegations of improper conduct by petitioner were sustained.

4

That same day, the Department issued to petitioner a notice of intent to terminate (NOI) for violating the MOU, Article XIV, section 2 regarding: (c) inefficiency or negligence in performance of duties; (d) neglect of duty; (e) insubordination; (f) willful violation of an employee regulation prescribed by the Board of Supervisors or the head of the department in which the employee is employed; (i) discourteous treatment of the public or other employees; and (m) conduct either during or outside of duty hours which adversely affects the employee's job performance or operation of the department in which they are employed. The Department also indicated that petitioner violated multiple general orders, Penal Code section 424, and Department Directive # 09-024. The Department alleged that petitioner had engaged in improper sexual relationships [Deputy Birchard (2010- 2015), Office Assistant II Miller (2014), Deputy Salas (2015)] and improper sexting relationships [Community Service Officer II Herrera (2006- 2007), Community Service Officer II Kabbara (2013- 2016)].

On April 25, 2017, the Department terminated petitioner. Petitioner filed an administrative appeal pursuant to Government Code section 3304, subdivision (b) of POBRA. An eight day hearing was presided over by Hearing Officer Michael Prihar. Following the testimony of numerous witnesses and admission of numerous exhibits, on January 12, 2020, the hearing officer sustained all but a few of the least serious allegations and found that the discipline was appropriate. Specifically, he found that the "preponderance of the evidence was such to sustain the following charges:

5

- Failure to act in a reasonable and professional manner to fellow members and the public at all times

- Failure to provide for the maintenance of morale and inspire of all members within the command

- Failure to properly perform duties and adhere to policies and procedures

- Failure to operate a command efficiently

- Failure to obey an order

- Failure to be governed by the ordinary and reasonable rules of good conduct and behavior

- Failure to refrain from any statements that tend to bring the Department to disrepute or ridicule

- Failure to avoid conduct that has the effect of unreasonably interfering with an individual's work performance

- Failure to confine use of Respondent's equipment for the performance of assigned duties

- Failure to avoid personal relationships with someone in his line of supervision

- Failure to report to a superior circumstance which he knew, or should have reasonably known, could create a conflict of interest."

Further the hearing officer found that the "sustained charges constitute a violation of the following sections of Article XIV, Section 2 of the Memorandum of

Understanding:  (c) Inefficiency or negligence in performance of duties; (d) Neglect of duty; (e) Insubordination; (f) Willful violation of an employee regulation prescribed by the Board of Supervisors or head of the department in which the employee is employed; (i) Making a material misrepresentation in connection with obtaining or maintaining employment or position; (m) Conduct which adversely affects the employee's job performance or operation of the department in which they are employed."

Based on his findings and conclusions, the hearing officer determined that "[t]ermination is the appropriate discipline."  In addition, the hearing officer found no POBRA violation and no violations of privacy rights.

Petitioner filed a petition for writ of mandate March 4, 2020, which was amended on August 11, 2020.  In his opening brief filed in connection with his petition, petitioner made numerous contentions challenging the hearing officer's findings of facts, including a challenge to the investigative delay, which he claims violated the one-year limitations period under POBRA.

Following a hearing at which both sides argued, the trial court denied the petition. The court concluded the evidence supported the finding that petitioner violated the nepotism and conflicting interests policy.  The court also agreed with the hearing officer's finding that there was sufficient evidence to substantiate that petitioner's actions constituted insubordination and unbecoming conduct and discredited the department particularly respecting his relationship with Birchard.  On the issue of whether there was

7

a violation of the POBRA statute of limitations, the trial court considered it carefully and found no violation. Petitioner timely appealed.

## DISCUSSION

In this appeal, petitioner does not challenge the findings of improper conduct or the nature of the discipline. The sole issue raised here on appeal is whether the one-year limitations period provided in Government Code section 3304, subdivision (d)(1) was exceeded. Petitioner argues the Department violated the one year limitations period because Chief Wood *should* have known of the improper conduct and initiated the investigation before May 2016.[1] Specifically he contends that because Chief Wood heard rumors about petitioner's relationships with female deputies before May 2016, the investigation should have commenced—and concluded—earlier. We disagree.

POBRA provides a list of basic rights and protections which must be afforded all peace officers by the public entities which employ them. (*Squire v. County of Los Angeles* (2018) 22 Cal.App.5th 16, 22, citing *Baggett v. Gates* (1982) 32 Cal.3d 128, 135.) POBRA balances the public interest in maintaining the efficiency and integrity of the police force with the officer's interest in receiving fair treatment. (*Jackson v. City of Los Angeles* (2003) 111 Cal.App.4th 899, 909.) Among POBRA's basic protections is the speedy adjudication concerning accusations of misconduct. (*Alameida v. State Personnel Bd*. (2004) 120 Cal.App.4th 46, 63.) Speedy adjudication permits peace

---

[1] At oral argument, petitioner asserted we misrepresented his argument, and that the issue was the limitations period was exceeded because the investigator *did* know of misconduct. The record does not support this assertion, where, as we point out, sexual relationships with female deputies were not, *per se*, improper.

8

officers to prepare a fair defense on the merits and marshal facts while memories and evidence are still fresh.  (*Jackson, supra*, at p. 909.)

To this end, Government Code section 3304 provides in pertinent part:  "Except as provided in this subdivision and subdivision (g), no punitive action, nor denial of promotion on grounds other than merit, shall be undertaken for any act, omission, or other allegation of misconduct if the investigation of the allegation is not completed within one year of the public agency's discovery by a person authorized to initiate an investigation of the allegation of an act, omission, or other misconduct.  This one-year limitation period shall apply only if the act, omission, or other misconduct occurred on or after January 1, 1998.  In the event that the public agency determines that discipline may be taken, it shall complete its investigation and notify the public safety officer of its proposed discipline by a Letter of Intent or Notice of Adverse Action articulating the discipline that year, except as provided in paragraph (2).  The public agency shall not be required to impose the discipline within that one-year period."  (Govt. Code, § 3304, subd. (d)(1).)

Government Code section 3304, subdivision (d)[2], therefore functions as a statute of limitations.  (*Mays v. City of Los Angeles* (2008) 43 Cal.4th 313, 323.)  "The 'one-year limitation period' begins to tick once a 'person authorized to initiate an investigation' [citation] 'discovers, or through the use of reasonable diligence should have discovered'

---

[2] Government Code section 3304, subdivision (d) was amended effective January 1, 2010.  (Stats. 2009, ch. 494, § 1; *Squire v. County of Los Angeles* (2018) 22 Cal.App.5th 16, 23)

9

the act, omission, or other allegation of misconduct. [Citation.]" (*Bacilio v. City of Los Angeles* (2018) 28 Cal.App.5th 717, 724.) However, before this limitations period is triggered, the public agency must first have determined that "discipline may be taken." (Gov. Code, § 3304, subd. (d)(1).)

In the present case, there is no dispute that Chief Wood was the officer "authorized to initiate an investigation." However, his testimony at the administrative hearing reveals while he had heard rumors of sexual relationships between petitioner and female deputies, it could not be determined that these relationships were "improper" in violation of Department polices. As both Chief Wood and Undersheriff Cleary each testified, the issue of petitioner having sexual relationships wasn't the issue; it was petitioner's failure to report the relationships to the Department, and petitioner's conduct in having sex with female deputies while on duty that was improper. Thus, while he may have been aware of certain conduct, it was premature to initiate an investigations of misconduct unless and until he learned that petitioner was engaged in *misconduct*.

Petitioner argues "there were at least a half-dozen supervisors and senior officers who were aware of allegations of misconduct involving Shouse prior to April 10, 2016, all of whom could have, like Chief Deputy Wood, initiated a complaint inquiry." The administrative record shows there were rumors of petitioner having intimate relationships and drinking to excess, but petitioner omits to identify a single officer who was "authorized to initiate" an investigation or demonstrate that the public agency had determined that discipline should be taken prior to May 2016.

10

Petitioner also fails to consider that Chief Wood did not assume his command until December 2015.[3] When he assumed this position, Wood "heard" from a number of sources about "alcohol-related concerns" regarding petitioner. Thereafter, at some undisclosed time, Wood learned of rumors from Captain Trevino about a relationship petitioner had with a female employee, who was showing pictures and text messages to others and stating she was saving these items. However, rumors of sexual relationships are not a sufficient basis to trigger the duty of investigation of misconduct leading to discipline.

At that point Chief Wood relayed his concerns to a superior but because he was just taking over the station, he did not know what the status of the female deputy was, so he did not know whether any Department policy had been violated. But he was also concerned the female deputy might be preparing action against the Department. The Assistant Sheriff directed Wood to ask petitioner directly about the relationship, which Wood did the next day, in May 2016. Petitioner admitted he had had a sexual relationship with one of his subordinate deputies. This information was obtained within the one-year limitations period. Prior to petitioner's admission, Wood did not know, and

---

[3] In cross-examining Chief Wood during the administrative hearing, petitioner's counsel tried unsuccessfully to get Wood to testify that he knew of the improper relationship in December 2015 by asking if matters were "brought to [Wood's] attention" at the end of 2015. Wood responded that would be "highly unlikely" because he had not been promoted until Christmas Eve 2015. Instead, he became aware of the rumors from Captain Trevino in early 2016, probably February or March or April 2016. And he learned that Deputy Birchard was the female deputy with whom the rumored relationship had taken place in April or early May 2016. Thus, petitioner misstates the evidence in arguing that Wood knew or should have known of the improper relationship as early as December 2015.

had no reason to know that petitioner committed misconduct. Once petitioner admitted the relationship, which had not been reported according to departmental directives, Wood knew or should have known of misconduct within the statute of limitations.

In the meantime, Wood learned of another relationship with a different female deputy, who informed Wood she felt petitioner was stalking her, and she relayed information about a shoving match between petitioner and the female deputy's boyfriend. At this point, Wood informed the Assistant Sheriff that an investigation was required, and the investigation began at that point.

Relationships between employees of the Department are not prohibited pursuant to Department Directive No. 09-024, which states: "While the Department will not prohibit personal or business relationships between employees, the following reasonable restrictions shall apply (Government Code § 12940(a): (a) Employees are prohibited from directly supervising, occupying a position in the line of supervision, or being directly supervised by any other employee who is a relative or with whom they are involved in a personal or business relationship." For this reason, in order to warrant discipline, the relationship would have to violate one of the personnel policies.

Wood testified that before his conversation with petitioner in May 2016, he did not know whether Birchard was in petitioner's chain of command. Because this fact is the critical fact in determining if petitioner had committed misconduct in violating Department directives, which would subject petitioner to investigation and discipline, and because the evidence is undisputed that Chief Wood gained this information in May

12

2016, the investigation, which concluded with the Departmental Notice of Intent in April 2017, was timely initiated.

The clock did not start to "tick" until it was determined petitioner had committed an act of misconduct, and because it could not have been determined that petitioner's relationship with Birchard was improper (and therefore misconduct) until her status as a person under petitioner's command had been determined, which occurred in May 2016, the investigation was commenced and competed within one year of Wood discovering the misconduct. Insofar as the misconduct with Birchard was the "tip of the iceberg," leading to the discovery of other and further misconduct for which petitioner was subjected to discipline, all allegations against petitioner were timely investigated within one year of the notice of intent to terminate.

We are certain petitioner does not wish to promote a policy of launching into the intimate relationships of public safety officers on the basis of mere rumors. Instead, an investigation into conduct that can have a devastating impact on the career of a public safety officer should only be initiated when the officer authorized to initiate an investigation knows or has reason to know that the conduct involves *actionable* misconduct. An officer authorized to initiate an investigation should not be required to do so on the basis of unsubstantiated rumors.

The trial court correctly determined there was no violation of the POBRA statute of limitations.

**DISPOSITION**

The judgment is affirmed.  Respondents are awarded costs on appeal.

CERTIFIED FOR PUBLICATION

RAMIREZ
                                                                    P. J.

We concur:

McKINSTER
                J.

SLOUGH
                J.